Ben J. Meiselas (SBN 277412)
meiselas@geragos.com
GERAGOS & GERAGOS
644 South Figueroa Street
Los Angeles, CA 90017-3411
Phone: (213) 625-3900
Fax: (213) 625-1600

Brian J. Wanca
bwanca@andersonwanca.com
Ryan M. Kelly
rkelly@andersonwanca.com
Glenn Hara
ghara@andersonwanca.com
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Phone: (847) 368-1500
Fax: (847) 368-1501

Matthew E. Stubbs
mstubbs@mrjlaw.com
MONTGOMERY, RENNIE & JONSON
36 East Seventh Street, Suite 2100
Cincinnati, Ohio 45202
Phone: (513) 241-4722
Fax: (513) 241-8775

Attorneys for Plaintiff
PHYSICIANS HEALTHSOURCE, INC. and the Proposed Class

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE INC., <br><br> Plaintiff, <br><br> v. <br><br> MASIMO CORPORATION, et al. <br><br> Defendants. | Case No. 8:14-cv-00001 JVS (ANx) <br><br> Hon. James V. Selna <br><br> **PLAINTIFF'S REPLY IN SUPPORT FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD ADDITIONAL PARTY PLAINTIFF** <br><br> **HEARING:** <br><br> Date:  March 11, 2019 <br> Time:  1:30 p.m. <br> Ctrm:  10C |

# TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................... 1

ARGUMENT ............................................................................. 2

1.    Masimo has failed to demonstrate it will suffer prejudice if Plaintiff's Motion for Leave is Granted ................................. 2

2.    Masimo's Claim that Plaintiff acted in Bad Faith is Without Merit ............................................................................. 8

3.    Allowing Leave to Add Geismann as Additional Party Plaintiff Before Ruling on Class Certification is Proper ........................... 11

4.    Plaintiff Met and Conferred in Good Faith .................................. 15

5.    Masimo's Failed Attempt to Moot Geismann's Claim ................. 16

6.    This Court Should Allow Plaintiff's Other Amendments to Plaintiff's Proposed Second Amended Complaint ...................... 20

CONCLUSION ........................................................................... 21

i

1

2                                     **TABLE OF AUTHORITIES**

3                                                                                       **Page**

4    **Cases**

5    *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,

6        781 F.2d 1393 (9th Cir. 1986) ........................................................................20

7    *Am. Pipe & Const. Co. v. Utah*,

8        414 U.S. 538 (1974) ......................................................................................14

9    *AmerisourceBergen Corp. v. Dialysist W., Inc.*,

10       465 F.3d 946 (9th Cir. 2006) ................................................................2, 20, 21

11   *Anderson v. Westinghouse Savannah River Co.*,

12   406 F.3d 248 (4th Cir. 2005) ...............................................................................12

13   *Armour v. City of Anniston*,

14   622 F.2d 1226 (5th Cir. 1980) .............................................................................12

15   *Birmingham Steel Corp. v. Tennessee Valley Auth.*,

16       353 F.3d 1331 (11th Cir. 2003) ......................................................................12

17   *Bowles v. Reade*,

18       198 F.3d 752 (9th Cir.1999) ...........................................................................2

19   *Brodie v. Board of Trustees of California State University*,

20       2013 WL 4536242 (C.D.Cal. Aug. 27, 2013) ...............................................15

21   *Campbell-Ewald Co. v. Gomez*,

22       136 S. Ct. 663 as revised (Feb. 9, 2016) ........................................................16

23   *CarMax Auto Superstores California LLC v. Hernandez*,

24        94 F. Supp. 3d 1078 (C.D. Cal. 2015) ...........................................................15

25   *Chen v. Allstate Ins. Co.*,

26       819 F.3d 1136 (9th Cir. 2016) ........................................................................16

27

28                                               ii

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

**Cases**

*Chico Feminist Women's Health Ctr. v. Butte Glenn Med. Soc.,*
  557 F. Supp. 1190 (E.D. Cal. 1983) ............................................................. 12

*China Agritech, Inc. v. Resh,*
  138 S. Ct. 1800 (2018) ........................................................................... 13, 14

*CMAX, Inc. v. Hall,*
  300 F.2d 265 (9th Cir. 1962) ...................................................................... 13

*ECASH Techs., Inc. v. Guagliardo,*
  35 Fed.Appx. 498 (9th Cir. May 13, 2002) ................................................. 15

*Erickson v. Newmar Corp.,*
  87 F.3d 298 (9th Cir. 1996) ........................................................................ 19

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.,*
  980 F. Supp. 2d 1160 (E.D. Cal. 2013) ........................................................ 2

*Gibson v. Local 40,*
  543 F.2d 1259 (9th Cir. 1976) .................................................................... 12

*Hill v. Opus Corp.,*
  841 F.Supp.2d 1070 (C.D.Cal.2011) ............................................................. 2

*Immigrant Assistance Project of Los Angeles Cty. Fed'n of Labor (AFL-CIO) v. I.N.S.,*
  306 F.3d 842 (9th Cir. 2002) ...................................................................... 14

*In re Circuit Breaker Litig.,*
  175 F.R.D. 547 (C.D. Cal. 1997) ................................................................ 13

*In re Glacier Bay,*
  746 F. Supp. 1379 (D. Ak. 1990) ............................................................... 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*In re Hubbard,*

  2013 WL 435945 (S.D. Cal. Feb. 4, 2013) ........................................................ 19

*Lockheed Martin Corp. v. Network Solutions, Inc.,*

  194 F.3d 980 (9th Cir.1999) .............................................................................. 2

*Morongo Band of Mission Indians v. Rose,*

  893 F.2d 1074 1079 ........................................................................................... 2

*Morrison v. Hickman,*

  2011 WL 672568 (C.D. Cal. Jan. 10, 2011)..................................................... 19

*Nat'l Fed'n of Blind v. Target Corp.,*

  582 F. Supp. 2d 1185 (N.D. Cal. 2007) ........................................................... 12

*Nat'l Liab. & Fire Ins. Co. v. Pac. Window Corp.,*

  2008 WL 11340360 (C.D. Cal. May 12, 2008) ............................................. 3, 4

*Osakan v. Apple Am. Grp.,*

  2010 WL 1838701 (N.D. Cal. May 5, 2010) ..................................................... 3

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*

  214 F. Supp. 3d 808 (N.D. Cal. 2016) ............................................................. 19

*QED Holdings, LLC v. Block,*

  2015 WL 12659935 (C.D. Cal. June 11, 2015)................................................ 19

*Rodriguez v. W. Publ'g Corp.,*

  563 F.3d 948 (9th Cir. 2009) ........................................................................... 19

*Satterwhite v. City of Greenville,*

  634 F.2d 231 (5th Cir. 1981) ........................................................................... 12

*True Health Chiropractic Inc. v. McKesson Corp.,*

  2014 WL 2860318 (N.D. Cal. June 23, 2014) ................................................. 14

iv

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Walker v. Life Ins. Co. of Sw.*,

   2018 WL 3816716 (C.D. Cal. July 31, 2018) ................................................15

**Rules**

Fed. R. Civ. P. 15 ...............................................................................................4
Fed. R. Civ. P. 15(a) ...................................................................................1, 2, 3
Fed. R. Civ. P. 16(b) ......................................................................................3, 4
Fed. R. Civ. P. 23 ......................................................................................12, 14
Fed. R. Civ. P. 54(b) .......................................................................................20
Fed. R. Civ. P. 72 .............................................................................................7
Rule 8.4 ...........................................................................................................19

**Other Authorities**

18 U.S.C. § 1028(a)(7) ...................................................................................19
18 U.S.C.A. § 1028(d)(7) ...............................................................................19
Cal.Penal Code § 530.5(a) .............................................................................19

v

Plaintiff Physicians Healthsource, Inc. respectfully submits this reply in support of its Motion for Leave to File Second Amended Complaint to Add Additional Party Plaintiff Radha Geismann M.D. P.C. ("Geismann"). (Doc. 143).

## BACKGROUND

Plaintiff's First Amended Complaint (FAC) was filed on January 14, 2014, alleging Plaintiff was sent two faxes by Masimo on October 12, 2011 and April 10, 2012. (Doc. 8 at 15-16). Plaintiff's Motion for Leave to File Second Amended Complaint to Add Additional Party Plaintiff ("Plaintiff's Motion for Leave") seeks to add the April 10, 2012 fax Geismann alleges it received from Masimo. (Doc. 143-2 at ¶ 2).

Masimo repeatedly attacks the timeliness of Plaintiff's Motion for Leave. (Doc. 143). On January 16, 2019, Plaintiff and Masimo filed a Joint Stipulation requesting extending several deadlines including the "last day to amend pleadings or add parties." (Doc. 133). That same day, this Court denied the Joint Stipulation and stated that this "Court will consider adjusting any dates other than trial and pretrial conference dates." (Doc. 134). On January 17, 2019, Plaintiff and Masimo conferred at length regarding the Joint Stipulation. (Declaration of Ross Good ("Good Decl2.") Ex. G). After the parties reached agreement, the parties filed a Joint Stipulation requesting this Court extend three deadlines including the "last day to amend pleadings or add parties." (Doc. 135). On January 22, 2019, this Court granted the Joint Stipulation to extend the three deadlines including extending the "last day to amend pleadings or add parties" from January 21, 2019 to April 1, 2019. (Doc. 141).

On January 27, 2019, Plaintiff's Counsel and Masimo's Counsel met and conferred pursuant to L.R. 7-3. (Doc. 143, "Good Decl1." at ¶ 6).Plaintiff's Motion for Leave was filed on February 5, 2019. (Doc. 143). "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"

*AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946, 951 (9th Cir. 2006) (quoting *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)). Masimo does not dispute that Plaintiff's Motion for Leave was filed pursuant to Rule 15(a). (Doc. 158 "Opp." 6).

## **ARGUMENT**

### **1. Masimo has failed to demonstrate it will suffer prejudice if Plaintiff's Motion for Leave is Granted**

Because Plaintiff's Motion for Leave was timely filed, Masimo has the burden of showing prejudice. (Doc. 143 at 5). Masimo states "[a] showing of prejudice also justifies denying leave to amend," citing *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1177 (E.D. Cal. 2013). (Opp. at 9). The case Masimo relies on makes clear that prejudice results only "when an amendment would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading." *Fresno Unified*, 980 F. Supp. 2d at 1177 (citing *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990); *Hill v. Opus Corp*., 841 F. Supp. 2d 1070, 1103–04 (C.D. Cal. 2011) (when motion to amend seeks to change party's claims in close proximity to trial, permitting the amendment may delay the progress of the case and prejudice the opponent's ability to prosecute its case.); *Lockheed Martin Corp. v. Network Solutions, Inc*., 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and thereby delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend."). Masimo states that "[b]eginning with its answer April 4, 2014, Masimo has consistently asserted defenses of inadequacy and typicality," but fails to explain how adding Gesimann as an additional party plaintiff is prejudicial. (Opp. at 9). Masimo's statements demonstrate Masimo plans to continue to assert the same defenses.

Masimo claims "adding a new class representative causes prejudice if the

defendants were 'preparing their defense based on the identity of the class representative....'" (Opp. at 9) (quoting O*sakan v. Apple Am. Grp.*, 2010 WL 1838701, at *5 (N.D. Cal. May 5, 2010)). The case Masimo cites involves a request to add four new class representatives "less than two weeks prior to the discovery cut-off." *Osakan*, 2010 WL 1838701, at *2 (N.D. Cal. May 5, 2010). Moreover, the decision in that case denying the request was also premised on the upcoming trial scheduled to commence in two months. *Id*. at *1. Finally, that Court said "the liberal rules governing motions to amend under Rule 15(a) are inapplicable" because there was a pretrial scheduling order which did not include a deadline to amend pleadings or add parties. *Id.* at *3. In contrast to the movant in *Osakan* where there were less than two weeks left in discovery, this Court granted the Joint Stipulation extending from January 21, 2019 to April 1, 2019 the "last day to amend pleadings or add parties" deadline. (Doc. 141). Within one week thereafter, Plaintiff and Masimo participated in the conference of counsel pursuant to L.R. 7-3 regarding Plaintiff's Motion for Leave. (Doc. 143-1 at ¶ 5-6). Masimo does not argue that Plaintiff should have participated in the conference of counsel pursuant to L.R. 7-3 within the preceding week. In short, Masimo cannot demonstrate any prejudice.

Despite the fact that Plaintiff's Motion for Leave was timely filed pursuant to Rule 15(a), Masimo cites cases where motions to amend were not timely filed pursuant to Rule 15(a). For example, *Nat'l Liab. & Fire* involved a request to amend filed "nearly nine months after that deadline." *Nat'l Liab. & Fire Ins. Co. v. Pac. Window Corp*., 2008 WL 11340360, at *1 (C.D. Cal. May 12, 2008). In that case, the Court explained that the amendment sought to "add six new affirmative defenses, six new counterclaims, a new third-party plaintiff, and different or additional responses to allegations made in" the operative complaint. *Id* at *2. The Court in *Nat'l Liab. & Fire* determined that because the request to amend was "brought nearly nine months after that deadline, Federal

-3-

Rule of Civil Procedure 16(b) governs" and "no good cause to amend the pleadings exists under Rule 16(b), [therefore] this Court need not consider whether [amendment] would be permitted to amend under Rule 15." *Id* at *3. Masimo cites *Nat'l Liab. & Fire* for the proposition that "granting leave to amend would likely require the parties to engage in additional discovery." (Opp. at 9). Masimo failed to mention that *Nat'l Liab. & Fire* was applying Rule 16(b) to a requested amendment filed nearly nine months after the deadline. In contrast to *Nat'l Liab. & Fire*, Plaintiff's Motion for Leave was timely filed, and asserts no new theories.

Masimo signed the Joint Stipulation on January 17, 2019, which requested to change the deadline for the "last day to amend pleadings or add parties" to April 1, 2019. (Doc. 135). Masimo claims it is prejudiced because it decided to perform "[Plaintiff]-Specific Discovery." (Opp. at 9-11). Masimo does not claim it would have conducted less discovery of Plaintiff if Geismann was added as an additional party plaintiff sooner. Masimo also is not alleging it misunderstood the effect of agreeing to the Joint Stipulation requesting to extend the "last day to amend pleadings or add parties" deadline to April 1, 2019. Masimo's claims of prejudice are hollow.

Masimo claims that "the deadline for class certification would need to be delayed until at least August of 2019. That would, in turn, necessitate continuing other deadlines, including the November 5, 2019, trial date...." (Opp. at 13). Masimo's implicit contention that it will be ready for trial in November is not credible as Masimo has not taken a single deposition in this case and actively thwarted attempts by Plaintiff to obtain relevant discovery and conduct depositions. (Good Decl2. at ¶ 26).

On May 21, 2018, Masimo was served Plaintiff's First Set of Requests For Production (Doc. 117-1, Ex. 1), and Interrogatories (Doc. 117-1, Ex. 2). On June 21, 2018, Masimo served its Responses to Plaintiff's First Set of Requests

for Production (Doc. 117-1, Ex. 3) and Interrogatories (Doc. 117-1, Ex. 4). At this time, Masimo began claiming that fax advertisements exist separate and apart from the two faxes Plaintiff alleges Masimo sent to it ("Masimo's Premise") and Plaintiff's discovery needed to be limited to the two faxes Plaintiff alleges Masimo sent to it. (Good Decl2. at ¶ 2).[1] If it ultimately turns out Masimo's Premise is false, then the prejudice to Plaintiff began at this point in the litigation.

On July 27, 2018, Plaintiff requested available deposition dates for the only employee identified by Masimo, Shanta Fisher ("Fisher"). (Good Decl2., Ex. A). On July 31, 2018, having not received any response from Masimo, Plaintiff served Plaintiff's Notice of Deposition of Fisher scheduling it for August 21, 2018. (Good Decl2., Ex. B).  After the close of business on July 31, 2018, Masimo informed Plaintiff it would not permit Fisher's deposition until "the Court determines whether Plaintiff may pursue class discovery, the extent to which Plaintiff's counsel may have access to confidential information, and Masimo can produce documents that may potentially relate to Fisher's deposition." (Good Decl2., Ex. C). On August 2, 2018, Plaintiff again requested available dates for the deposition of Fisher and reminded Masimo that Masimo "has not obtained a stay of discovery...[and Masimo's] position in effect overrules the Court's Case Management Order" (Good Decl2., Ex. D). On August 7, 2018, having received no confirmation from Masimo that Fisher would be produced for deposition on August 21, 2018, Plaintiff informed

---

[1] Masimo's Responses to Plaintiff's First Set of Requests for Production include the statement "Masimo regards discoverable documents as limited to those relating to Exhibit A" in response to nearly every request. (Doc. 117-1, Ex. 3). Masimo's Responses to Interrogatories include the statement "Masimo regards discoverable information as limited to information relating to Exhibit A" in response to nearly every interrogatory. (Doc. 117-1, Ex. 4).

Masimo that the Notice of Deposition was being withdrawn and reiterated its request for available dates for Fisher's deposition so it could proceed by agreement of the parties. (Good Decl2., Ex. E).

Masimo admits that from "June to September 2018" Masimo "communicated by email and telephone with [Plaintiff] regarding" discovery issues including whether Plaintiff was entitled to fax advertisements other than those it alleges it received. (Doc. 96 at ¶ 2).[2] On September 24, 2018, Masimo's correspondence repeated Masimo's Premise: Plaintiff "**Is Not Entitled To Discovery As To Faxes Other Than Those It Claims To Have Received**." (Doc. 96-10 at 2) (emphasis in original). On October 3, 2018, Masimo filed its Motion for Protective Order requesting the Court limit the scope of discovery based on Masimo's Premise. (Doc. 95 at 12). Additionally, Masimo provided Magistrate Judge Spaeth its proposed protective order which contained explicit language based on Masimo's Premise: "[t]he scope of discovery does not include any other alleged fax advertisements" except those Plaintiff alleges it received. (Doc. 96-1 at 12). At the November 14, 2018 hearing, Magistrate Judge Spaeth declined to rule on Masimo's Motion for Protective Order and instructed the parties to refile it pursuant to L.R. 37-2.4. (Doc. 111).

On December 12, 2018, the parties filed the Joint Stipulation accompanying Masimo's Motion for Protective Order and Motion to Quash Subpoena. (Doc. 116). Based on Masimo's Premise, Masimo again requested Magistrate Judge Spaeth Order that "[t]he parties may not pursue discovery regarding information concerning other alleged faxes" except the two alleged fax advertisements that Plaintiff claims it received and quash "any aspects of [Plaintiff's] subpoenas that seek information about alleged faxes other than the two alleged fax advertisements that [Plaintiff] claims to have received." (Doc.

_____
[2] These communications were based almost entirely on Masimo's Premise.

115-1 at ¶¶ 1, 4). On December 19, 2018, Masimo filed its Supplemental Memorandum in Support of Masimo's Motion for Protective Order and Motion to Quash Subpoena and argued "Discovery Should Be Limited To Faxes [Plaintiff] Allegedly Received" again based on Masimo's Premise. (Doc. 122 at 1). On January 4, 2019, Magistrate Judge Spaeth denied Masimo's Motion for Protective Order and Motion to Quash Subpoena and ruled that "at this time, it is not appropriate to limit Plaintiff's discovery as requested by Defendants." (Doc. 126 at 2). As a result of Magistrate Judge Spaeth's Order: (1) Masimo produced over 3,600 pages of non-public documents responsive to Plaintiff's Requests For Production, (2) Masimo served a 45 page confidential document containing its Supplemental Responses to Plaintiff's First Set of Interrogatories, and (3) SK&A produced its response to Plaintiff's Subpoena. (Good Decl2. at ¶¶ 10, 14).

On January 18, 2019, Masimo filed its Motion for Review of Magistrate Judge Spaeth's January 4, 2019 Order again based on Masimo's Premise. (Doc. 138).[3] On January 26, 2019, having still not received a single available date for deposition from Masimo, Plaintiff served Plaintiff's Notice of Deposition of Masimo employees Fisher, Gary Marston, Lisa Belodoff and Michelle Hsu and scheduled their depositions for February 21-22, 2019. (Good Decl2, Ex. H). On February 14, 2019, counsel for Masimo unilaterally cancelled all four depositions without explanation. (Good Decl2, Ex. I). On February 15, 2019, Plaintiff requested documentation demonstrating the unavailability of each of

_____

[3] Masimo proceeded to inform recipients of Plaintiff's Subpoenas that "Masimo filed with the District Judge objections to the Magistrate Judge's [January 4, 2019] minute order pursuant to Federal Rule of Civil Procedure 72. [Masimo] will write again to update you when the District Judge rules on Masimo's objections." (Doc. 142-1, Ex. A). Masimo neglected to mention that Masimo has not sought a stay of Magistrate Judge Spaeth's January 4, 2019 Order.

the four Masimo employees for deposition and reiterating its request for available deposition dates. (Good Decl2., Ex. J).  As of this filing, Plaintiff has not received any documentation demonstrating the unavailability of any of the four Masimo employees for deposition. (Good Decl2. at ¶ 24).  On February 22, 2019, Masimo's Counsel informed Plaintiff's Counsel for the first time that Masimo "will try to have potential dates to discuss during" the next scheduled telephonic meet-and-confer. (Good Decl2., Ex. K).

At the hearing on February 25, 2019 regarding Masimo's Motion for Review (Doc. 138), this Court was informed of Plaintiff's doubts regarding Masimo's Premise. (Good Decl2. at ¶ 20). Specifically, this Court was informed Plaintiff's doubts regarding Masimo's Premise are based on a review of Masimo's January 8, 2019 Production of Documents, Masimo's January 16, 2019 Supplemental Responses to Plaintiff's First Set of Interrogatories, and SK&A's January 22, 2019 response to Plaintiff's Subpoena. (Good Decl2. at ¶ 17-18). As of the filing of this brief, Masimo has not informed Plaintiff whether it still contends Masimo's Premise is true. (Good Decl2. at ¶ 21).

While impeding discovery sought by Plaintiff based on Masimo's Premise, Masimo has had the opportunity to seek discovery from Plaintiff unimpeded. At times Masimo's discovery requests have been so disproportionate that Magistrate Judge Spaeth described them as "so broad and at times call for pretty much every document that could exist in a business." (Doc 117-1, Ex. 20 ("Hr'g Tr., Nov. 14, 2018") at 75). In sum, as Masimo has failed to show that it would suffer any prejudice from Plaintiff's proposed amendment, this Court should grant leave to amend.

**2.  Masimo's Claim that Plaintiff acted in Bad Faith is Without Merit**

Masimo accuses Plaintiff's Counsel of misusing "confidential information" contained in SK&A's January 22, 2019 response to Plaintiff's Subpoena. (Opp. at 16–17). This would be a serious accusation except for the

-8-

1    timeline of events which makes it impossible.[4] Magistrate Judge Spaeth entered

2    the Protective Order governing confidential material on December 21, 2018.

3    (Doc. 123). No confidential material was produced to Plaintiff's Counsel prior

4    to December 21, 2018. (Good Decl2 at ¶ 8). Geismann signed the retainer

5    agreement with Plaintiff's Counsel in this matter on November 28, 2018. (Good

6    Decl1 at ¶ 4; Declaration of Rahda Geismann ("Geismann Decl.") at ¶ 6). If

7    Masimo is able to coherently allege a violation of the Protective Order, then it

8    should promptly identify it. Plaintiff is certain that violations of the Protective

9    Order will be taken seriously. Plaintiff remains hopeful that false accusations

10   made without basis alleging "likely" violations of the Protective Order will also

11   be taken seriously. (Opp. at 14).

12        Masimo has no coherent theory to establish its claim Geismann's decision

13   to retain Plaintiff's Counsel is evidence of bad faith. Masimo falsely claims (1)

14   Plaintiff's Counsel has a practice of "reviewing transmission lists" which is

15   "how [Plaintiff's Counsel] appears to have located Geismann," and (2)

16   "transmission lists" have been produced to Plaintiff in this case. (Opp. at 16). To

17   date, SK&A has not produced any transmission lists in this case. (Good Decl2.

18   at ¶ 27). To date, Masimo has not produced transmission lists in this case.

19   (Good Decl2. at ¶ 28). To date, there have been no transmission lists produced

20   by any party or non-party in this case. (Good Decl2. at ¶ 29). Furthermore,

21   Plaintiff's Proposed Second Amended Complaint includes a copy of the fax

22

23   ---

     [4] This is not the first time Masimo has made a baseless accusation against

     Plaintiff's Counsel. In a discovery dispute, Masimo claimed it needed all of

24   Plaintiff's Counsel's communications with all experts not retained in this matter

     to determine if Plaintiff's Counsel had an agreement with any expert "to provide

25   testimony contingent on the outcome of the case in a prior case, that would be

26   incredibly important to know when we are deposing that expert in this case."

     (Hr'g Tr., Nov. 14, 2018 at 74). Plaintiff has not retained an expert in this

27   matter.

28

                                          -9-

1  Geismann retained since April 10, 2012. (Doc. 143-2 at 17; Geismann Decl. at ¶
2  7). Masimo acknowledges that Plaintiff's Counsel "has been representing
3  Geismann in TCPA cases for more than a decade" (Opp. at 7). Masimo will
4  have ample opportunity to request discovery from Geismann and depose
5  Geismann if this Court grants Plaintiff's Motion for Leave.

6      On June 28, 2018, Masimo stated its intention to "separately seek a
7  protective order precluding Anderson & Wanca and Montgomery, Rennie &
8  Jonson from accessing any non-public information produced by Masimo or third
9  parties." (Doc. 74 at 11). Assuming *arguendo* Masimo followed through on its
10 stated intention and this Court decided in Masimo's favor, Geismann may have
11 had to consider retaining alternate counsel. Magistrate Judge Spaeth entered the
12 Protective Order governing confidential material on December 21, 2018. (Doc.
13 123). Masimo first produced "non-public" documents responsive to Plaintiff's
14 Requests For Production on January 8, 2019. (Good Decl2. at ¶ 10).

15     Masimo alleges, without even a scintilla of evidence, that Plaintiff's
16 "explanation for the timing of its Motion [for Leave] lacks credibility." (Opp. at
17 14).[5] Masimo correctly identifies that the original deadline for Plaintiff to meet
18 and confer pursuant to L.R. 7-3 regarding a motion for leave to add a new party
19 was January 14, 2019. (Opp. at 15). Masimo alleges that Plaintiff allowed
20 January 14, 2019 to pass without "conducting a conference or mentioning any
21 interest in adding a new plaintiff." (Opp. at 15). Masimo complains that
22 granting Plaintiff's Motion for Leave "would cause Masimo great and
23 irreparable prejudice." (Opp. at 13). Masimo left out some key details regarding

24 ──────────────
25 [5] Plaintiff is willing to make the retainer agreement available to this Court for *in
   camera* inspection. If Masimo will pay the expense, Plaintiff is willing to craft a
26 protocol to allow an independent forensic analyst to analyze and authenticate the
   electronic correspondence from November 28, 2018 to confirm that Geismann
27 in fact retained Plaintiff's Counsel on November 28, 2018.
28

the communications between Plaintiff and Masimo.

First, Masimo neglected to mention that on January 11, 2019, after corresponding via email about amending scheduling deadlines, Plaintiff's Counsel met and conferred telephonically with Masimo's Counsel twice regarding (1) Masimo's intention to file a Motion for Review of Magistrate Judge Spaeth's January 4, 2019 Order, and (2) Masimo's position on whether to file a Joint Stipulation requesting to amend scheduling deadlines. (Good Decl2. at ¶ 11, Ex. G at 11-12). Second, Masimo neglected to mention to this Court that early on January 14, 2019, Masimo requested Plaintiff unilaterally request this Court extend the deadline for the "last day to amend pleadings or add parties." (Good Decl2. at ¶ 12). Third, Masimo neglected to reference that Plaintiff emailed Masimo within minutes of this phone call summarizing the conversation: "[a]s we discussed, Masimo is contemplating bringing in one or more additional parties… **Plaintiff does not believe it is appropriate that Plaintiff should have to extend deadlines unilaterally when it is in both of our interests.**" (Good Decl2., Ex. G at 10) (emphasis added). The details Masimo left out of its brief demonstrate that Masimo and Plaintiff were on notice that each other were contemplating a filing before the "last day to amend pleadings or add parties" deadline.[6]

### 3. Allowing Leave to Add Geismann as Additional Party Plaintiff Before Ruling on Class Certification is Proper

Granting Plaintiff's Motion for Leave and allowing Geismann to be added as an additional party plaintiff now avoids a potential delay in litigation. Where class certification is otherwise appropriate, but the proposed class representative

---

[6] March 25, 2019 is the last day for Masimo to meet-and-confer pursuant to L.R. 7-3 regarding the motion it told Plaintiff it was contemplating. (Doc. 141). Plaintiff will not make baseless accusations against Masimo if Masimo waits until the last day to meet-and-confer.

"is not a proper class representative," then the court "shall take such action as it may deem necessary to determine whether there is an appropriate class representative." *Satterwhite v. City of Greenville*, 634 F.2d 231, 231 (5th Cir. 1981); *see also Gibson v. Local 40*, 543 F.2d 1259, 1263 (9th Cir.1976) ("In any event, failure of proof as to the named plaintiffs would not bar maintenance of the class action or entry of judgment awarding relief to the members of the class."); *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1201 (N.D. Cal. 2007) ("As long as the proposed class satisfies the requirements of Rule 23, the court may certify the class conditioned upon the substitution of another named plaintiff."); *Armour v. City of Anniston*, 622 F.2d 1226 (5th Cir. 1980) (court should "substitute an appropriate class representative should one desire to be appointed"); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 275 (4th Cir. 2005) (permitting plaintiffs the opportunity to remedy defect in class representative by finding substitute representative; *Chico Feminist Women's Health Ctr. v. Butte Glenn Med. Soc.*, 557 F. Supp. 1190, 1201 (E.D. Cal. 1983) (plaintiffs "granted 60 days from the date this order is filed within which to amend their complaint to name a proper class representative."); *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1342 (11th Cir. 2003) (allowing "a reasonable period of time for the substitution or intervention of a new class representative"). By bringing Geismann forward now, Plaintiff is seeking to avoid a potential delay in this litigation.

Masimo's argument that Geismann waiting to long to be permitted to assert its claim, ignores the procedural history of this case. Masimo mentions that Plaintiff "filed its First Amended Complaint over five years ago" but does not mention that from 2014-2018 this case was stayed at Masimo's request. (Doc. 47, Order Granting Def.'s Mot. Stay). Masimo argued in favor of the stay of this case by claiming Plaintiff "would not have a private right of action for any alleged violation relating to solicited faxes...[because] the TCPA's fax-

related restrictions apply only to *unsolicited* advertisements, not *solicited* advertisements." (Doc. 25 at 4). In its reply brief, Masimo argued that "A Stay Would Not Cause Undue Delay As the FCC is Actively Considering Masimo's Petition." (Doc. 37 at 3-7). This Court granted Masimo's request for stay after reviewing the competing interests: "(1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." (Doc. 47 at 2) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). Masimo has suffered no damage as a result of the stay it obtained but now seeks to use the stay to harm the putative class by precluding Geismann from being named an additional party plaintiff and potentially serving as a class representative.

Masimo argues "when considerable time has passed between the filing of the original pleading and the motion to amend, the burden remains with the movant to show some valid reason for the delay." *In re Circuit Breaker Litig*., 175 F.R.D. 547, 550 (C.D. Cal. 1997). Plaintiff's "valid reason for delay" is the four year stay Masimo obtained based on its claim of express permission for which it still has produced no factual support or basis. Plaintiff contends that if Masimo had truthfully admitted to this Court that it purchased fax lists from SK&A and never attempted to obtain prior express permission from putative class members, this Court would likely have denied the stay altogether.

Similarly, Masimo asserts that Geismann's claims are time barred and allowing Geismann's claims to "relate-back" would be an end-run around *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1810-1811 (2018). (Opp. at 19-20). To the contrary, *China Agritech* has nothing to do with amending a complaint in an existing case. It merely holds that, once the statute of limitations expires, "[a]ny plaintiff whose individual claim is worth litigating on its own rests secure in the

-13-

1   knowledge that she can avail herself of *American Pipe* tolling if certification is

2   denied to a first putative class…The watchwords of *American Pipe* are

3   efficiency and economy of litigation, a principal purpose of Rule 23 as well.

4   Extending *American Pipe* tolling to successive class actions does not serve that

5   purpose." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1810-1811 (2018)

6   (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974)). The recent

7   Supreme Court decision has no bearing on Rule 15. Furthermore, Masimo does

8   not allege that granting leave to add Geismann as a party plaintiff would

9   constitute a "successive class action."

10          In *Immigrant Assistance Project of Los Angeles Cty. Fed'n of Labor*

11   *(AFL-CIO) v. I.N.S.*, 306 F.3d 842, 858–59 (9th Cir. 2002), the Ninth Circuit

12   held that the claims of two class members who were added as plaintiffs to a

13   putative class action after the expiration of the statute of limitations for filing a

14   new lawsuit "[related] back to the original complaint" and were therefore

15   timely, without any need for *American Pipe* tolling. The Ninth Circuit cited with

16   approval *In re Glacier Bay,* 746 F. Supp. 1379 (D. Ak. 1990), where the district

17   court allowed the "addition of new plaintiffs who are similarly situated to the

18   original plaintiffs" after the expiration of the statute of limitations under the

19   relation-back doctrine, holding the original class complaint "put defendants on

20   notice that all those involved in the fishing industry in Cook Inlet were potential

21   plaintiffs" and that "[t]he addition of new plaintiffs who are similarly situated to

22   the original plaintiffs does not cause defendants any prejudice." *Immigrant*

23   *Assistance Project of Los Angeles Cty. Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306

24   F.3d at 858, n.14;  *see also True Health Chiropractic Inc. v. McKesson Corp.*,

25   2014 WL 2860318, at *3–4 (N.D. Cal. June 23, 2014) (holding in TCPA junk-

26   fax suit that new proposed class representative's claims related back to initial

27   complaint).

28          Masimo has cited no authority holding that *China Agritech* changed the

-14-

law in this circuit regarding whether a class member's claims relate back to the initial complaint. The closest post-*China Agritech* case Plaintiffs' counsel located in this circuit, *Walker v. Life Ins. Co. of Sw.*, 2018 WL 3816716, at *5 (C.D. Cal. July 31, 2018), held that, although *China Agritech* prohibits an absent class member "to file a new class action lawsuit after the statute of limitations has expired," it does not preclude class members from asserting revived claims "in the same action in which they were originally brought." Thus, Masimo's argument is foreclosed by controlling Ninth Circuit authority.

### 4. Plaintiff Met and Conferred in Good Faith

Assuming *arguendo* that Masimo's assertion that the conference of counsel pursuant to L.R. 7-3 was not sufficient, this Court should still make a decision on the merits of Plaintiff's Motion for Leave. "Failure to comply with the Local Rules does not automatically require the denial of a party's motion, however, particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015); *see also ECASH Techs., Inc. v. Guagliardo*, 35 Fed.Appx. 498, 500 (9th Cir. May 13, 2002) ("The Central District of California's local rules do not require dismissal of appellee's motions for failure to satisfy the meet-and-confer requirements" (citations omitted)); *Brodie v. Board of Trustees of California State University*, 2013 WL 4536242, *1 (C.D.Cal. Aug. 27, 2013) (considering the merits of a motion despite counsel's failure to comply with Local Rule 7–3). Plaintiff did meet and confer with Masimo in regard to the proposed amendment of the Complaint. Therefore, Plaintiff did not violate the local rules.

During the January 28, 2019 meet-and-confer regarding the filing of Plaintiff's Motion for Leave (Doc. 143) Plaintiff's Counsel explained the general basis for its proposed amendment.  At that time, counsel for Masimo insisted that counsel for Plaintiffs identify the additional plaintiff by name, thereby

enabling Masimo to attempt to pick-off the additional plaintiff.   Accordingly, Counsel for Plaintiff requested Masimo's Counsel stipulate that Masimo "would not attempt to moot the additional proposed plaintiff's claim prior to the filing of the instant motion." When Masimo's Counsel refused, Plaintiff "did not identify the additional proposed plaintiff (Geismann) by name." (Good Decl1. at ¶ 6).

During the telephonic February 8, 2019 meet-and-confer regarding Masimo's Ex Parte Application to Strike (Doc. 145) Plaintiff's Counsel again requested Masimo stipulate not to attempt to "pick off" Geismann. (Doc. 147-1, Ex. A). During that call, Masimo's Counsel again would not agree to stipulate to "not moot Geismann's claims." *Id.* Masimo's Counsel also "repeatedly conflated **'settlement'** with involuntarily mooting Geismann's claims." *Id.* (emphasis added).

Plaintiff's concern for a pick-off was justified, as Masimo obtained the banking/wiring information from local counsel for Plaintiff under false pretenses and then proceeded to wire $5,000 to local counsel in an effort to moot Geissman's claim. From this gambit, Masimo now alleges "Geismann's claims are futile because they are" moot. (Opp. at 18). This argument is legally defective because a "would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138–39 (9th Cir. 2016) (quoting *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672, as revised (Feb. 9, 2016)). Geismann has a live claim, as she had knowledge of Masimo's effort to resolve her claim by surreptitiously wiring funds to a law firm serving as local counsel and has no interest in resolving her claim on an individual basis.

### 5.  Masimo's Failed Attempt to Moot Geismann's Claim

On July 12, 2018, in response to Plaintiff' Counsel requesting a Word version of Masimo's discovery requests from the legal assistant who sent the discovery requests, Masimo's Counsel emailed Plaintiff's Counsel and

demanded that Plaintiff's Counsel "not initiate contact with" Masimo's Counsel's support staff. (Good Decl2., Ex. M). Masimo continued, "[i]nitiating such contact without including any of" Masimo's Counsel "is **particularly egregious**." *Id.* (emphasis added). Plaintiff's Counsel has respected Masimo's Counsel's request; Masimo's Counsel violated this in an effort to gain a tactical advantage.

On February 19, 2019, Stephen Larson ("Larson"), Counsel for Masimo, contacted two non-attorney employees of Geragos & Geragos, one of the law firms representing Plaintiff, and engaged in conduct Masimo's Counsel describes as "**particularly egregious**." (Doc. 160, ("Larson Decl.") at ¶ 2-3; Good Decl2., Ex. M). Larson acknowledges talking to a "receptionist" at Geragos & Geragos and being transferred "to another employee of Geragos & Geragos, Margo Hartley" that ultimately provided Masimo's Counsel the "wire instructions for Geragos & Geragos" after Larson claims he represented to Hartley that it was to "resolve a potential claim." (Larson Decl. at ¶¶ 2-3).

Larson fails to acknowledge the representations he made to Geragos & Geragos to obtain its wiring instructions. Geragos & Geragos has a policy to only provide wiring instructions to opposing counsel to effectuate payments for settlements. (Declaration of Mark Geragos ("Geragos Decl.") at ¶ 5). On February 19, 2019, Larson called Geragos & Geragos and spoke to Kirsten Swenson. (Declaration of Kirsten Swenson ("Swenson Decl.") at ¶ 2). Larson represented to Swenson "that there was a **settlement** reached in a matter involving Geragos & Geragos and [Larson] requested" Geragos & Geragos's bank account number and routing code. *Id.* at ¶ 3 (emphasis added). Believing Larson's representations to be true, Swenson explained to Larson that she "did not have access to Geragos & Geragos's bank account number and routing code…[and] that he would need to speak to another employee: Margo Hartley." *Id.* at ¶ 4. But for Larson representing "that there was a settlement," Swenson

-17-

"would not have identified Margo Hartley as the person to talk to obtain Geragos & Geragos's bank account number and routing code." *Id.* at ¶ 6.

Larson next represented to Margo Hartley "that there was a **settlement** reached in a matter involving Geragos & Geragos" and Larson requested "Geragos & Geragos's bank account number and routing code via email to Stephen.Larson@knobbe.com so [Larson] could transfer the settlement funds." (Declaration of Margo Hartley ("Hartley Decl.") at ¶ 4) (emphasis added). Believing Larson's representations to be true, Hartley "emailed Geragos & Geragos's bank account number and routing code" as Larson requested. *Id.* at ¶ 5. But for Larson representing "that there was a **settlement**," Hartley would not have provided Larson with "with Geragos & Geragos's bank account number and routing code." *Id.* at ¶ 7 (emphasis added). No attorney representing Masimo, including but not limited to Larson, has ever requested to speak to any attorney at Geragos & Geragos regarding settlement of Geismann's claim. (Geragos Decl. at ¶ 8; Swenson Decl. at ¶ 5; Hartley Decl. at ¶ 6). Masimo's Counsel's position is clear: Larson's conduct "[i]nitiating such contact" with non-attorney support staff of Plaintiff's Counsel "is **particularly egregious**." (Good Decl2., Ex. M).

After reviewing Larson Decl., Plaintiff's Counsel contacted Geragos & Geragos's bank to inquire about the status of the wire transfer referred to in Stephen Larson's Declaration. (Geragos Decl. at ¶ 9). The wire transfer referenced by Masimo (Doc. 160-2) was rejected by Geragos & Geragos's bank. (Geragos Decl. at ¶ 10, Ex. A). Moreover, Geismann never accepted Masimo's wire transfer because Geismann seeks "to be a class representative in this matter." (Geismann Decl. at ¶ 11). In light of Masimo's conduct, Plaintiff has notified Masimo that "Plaintiff's Counsels and their support staffs intend to record future calls between Masimo's Counsel and Plaintiff's Counsel" (Good Decl2., Ex. L).

Rule 8.4 of California Bar Rule or Professional Conduct states "[i]t is professional misconduct for a lawyer to ... engage in conduct involving **dishonesty, fraud, deceit or misrepresentation**; [or] engage in conduct that is prejudicial to the administration of justice." *In re Hubbard*, 2013 WL 435945, at *4 (S.D. Cal. Feb. 4, 2013) (emphasis added). "The Central District of California has adopted the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions applicable to the Act and Rules. C.D. Cal. L.R. 83–3.1.2." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 960 (9th Cir. 2009). "A court in this district has the inherent authority to disqualify an attorney or firm as counsel for violating those standards, either of its own accord or in response to a motion to disqualify counsel." *QED Holdings, LLC v. Block*, 2015 WL 12659935, at *11 (C.D. Cal. June 11, 2015) (citing *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) (explaining that district courts have "inherent powers to manage their own proceedings and to control the conduct of those who appear before them," and "an arsenal of sanctions they can impose for unethical behavior," including "disqualification of counsel")).

Moreover, it is a violation of Federal Law to 'knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another…in connection with, any unlawful activity that constitutes a violation of Federal law.'" *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 824 (N.D. Cal. 2016), aff'd, 890 F.3d 828 (9th Cir. 2018), amended, 897 F.3d 1224 (9th Cir. 2018), and aff'd, 735 F. App'x 241 (9th Cir. 2018) (quoting 18 U.S.C. § 1028(a)(7)). Means of identification includes "unique electronic identification number" and "routing code." 18 U.S.C.A. § 1028(d)(7). "California law prohibits anyone from obtaining someone else's personal identifying information and, thereafter, using it for an unlawful purpose." *Morrison v. Hickman*, 2011 WL 672568, at *6 (C.D. Cal. Jan. 10, 2011) (citing Cal.Penal Code § 530.5(a)). The definition of Personal

Identifying Information includes both "checking account number" and "routing code" *Id.* at *7 (citing Cal.Penal Code § 530.5(b) (2003)).

## 6. This Court Should Allow Plaintiff's Other Amendments to Plaintiff's Proposed Second Amended Complaint

None of the amendments to Plaintiff's Proposed Second Amended Complaint (Doc. 143-2) set forth new theories or alter any of the claims against Masimo. Plaintiff explained in its Memorandum in Opposition to Masimo's *Ex Parte* Application to Strike or Vacate Plaintiff's Motion for Leave that changes were made to the FAC to comport with recent changes to relevant caselaw. (Doc. 147 at 5-7). Masimo argues that "[l]ate amendments are 'not reviewed favorably,'" citing *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). (Opp. at 6–7). But the Ninth Circuit actually held that "late amendments **to assert new theories** are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri*, 781 F.2d at 1398 (emphasis added). Masimo does even attempt to claim that any "new theories" are being asserted here. Masimo's reliance on *Acri* is woefully misplaced.

Masimo cites *AmerisourceBergen Corp.* for its claim that granting Plaintiff's Motion for Leave would "force Masimo to 'scramble' to defend itself in such a short period of time is the epitome of prejudice." (Opp. at 12). The district court in *AmerisourceBergen Corp.* "granted [non-movant]'s motion for judgment on the pleadings, denied [movant]'s motion for leave to amend, and certified the judgment as final under Rule 54(b)" simultaneously. *AmerisourceBergen Corp.*, 465 F.3d at 949. The Ninth Circuit explained allowing the movant to "advance different legal theories and require proof of different facts at this stage in the litigation would have prejudiced [non-movant] and unfairly delayed [non-movant's] collection of a judgment." *Id.* at 953 (internal quotation omitted). Again, Plaintiff does not seek to advance any new

-20-

1   legal theories. *AmerisourceBergen* is inapplicable.

2   **<u>CONCLUSION</u>**

3       WHEREFORE, Plaintiff respectfully request that this Honorable Court

4   grant it leave to file its Second Amended Complaint, and to add RADHA

5   GEISMANN M.D. P.C. as an additional party Plaintiff, and for any other relief

6   this Court deems just in the premises.

7                    Respectfully submitted,

8                    ANDERSON + WANCA

9

10   Dated: February 26, 2019     By: *s/ Ross M. Good*
                                       Attorneys for

11                    PHYSICIANS HEALTHSOURCE, INC. and
                   RADHA GEISMANN M.D. P.C.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28