Joseph R. Re (SBN 134479)
joe.re@knobbe.com
Stephen C. Jensen (SBN 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (SBN 208527)
ben.katzenellenbogen@knobbe.com
Stephen W. Larson (SBN 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Attorneys for Defendants
MASIMO CORPORATION and MASIMO AMERICAS, INC.

Brian J. Wanca
bwanca@andersonwanca.com
Ross M. Good
rgood@andersonwanca.com
Ryan M. Kelly
rkelly@andersonwanca.com
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Phone: (847) 368-1500
Fax: (847) 368-1501

Attorneys for Plaintiff
PHYSICIANS HEALTHSOURCE, INC. and RADHA GEISMANN M.D. P.C.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>MASIMO CORPORATION, et al.<br><br>Defendants. | Case No. 8:14-cv-00001 JVS (ADSx)<br><br>[Discovery Document: Referred to Magistrate Judge Autumn D. Spaeth]<br><br>**JOINT STIPULATION ACCOMPANYING MASIMO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES TO INTERROGATORIES**<br><br>Date: May 15, 2019<br>Time: 10:00 a.m.<br>Dept.: 6B<br><br>Fact Discovery Cut-Off: 7/1/2019<br>Pretrial Conference: 10/21/2019<br>Trial: 11/5/2019 |

# TABLE OF CONTENTS

**Page No.**


I. INTRODUCTORY STATEMENTS .......... 1

A. Masimo's Introduction .......... 1

B. PHI's Introduction .......... 2

II. CONTENTIONS AND POINTS AND AUTHORITIES .......... 4

A. Interrogatory No. 16 .......... 4

1. Masimo's Contentions and Points of Authority .......... 5

2. PHI's Response .......... 7

B. Interrogatory No. 18 .......... 9

1. Masimo's Contentions and Points of Authority .......... 10

2. PHI's Response .......... 13

C. Interrogatory No. 19 and Request for Production No. 112 .......... 14

1. Masimo's Contentions and Points of Authority .......... 15

2. PHI's Response .......... 16

D. Request for Production No. 113 .......... 19

1. Masimo's Contentions and Points of Authority .......... 20

2. PHI's Response .......... 21

E. Request for Production No. 114 .......... 22

1. Masimo's Contentions and Points of Authority .......... 23

2. PHI's Response .......... 24

F. Request for Production No. 119 .......... 25

1. Masimo's Contentions and Points of Authority .......... 25

2. PHI's Response .......... 27

G. Request for Production No. 122 .......... 29

1. Masimo's Contentions and Points of Authority .......... 29

2. PHI's Response .......... 30

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendants Masimo Corporation and Masimo Americas, Inc. (collectively, "Masimo"), and Plaintiff Physician Healthsource, Inc. ("PHI"), through their respective counsel of record, submit this joint stipulation in connection with Masimo's motion to compel. Pursuant to Local Rule 37-1, this Joint Stipulation was prepared following the parties' conference of counsel, which took place on April 2, 2019.

## I. INTRODUCTORY STATEMENTS

### A. Masimo's Introduction

PHI refuses to participate in discovery, and Masimo now seeks relief from this Court for a third time. Masimo filed a first motion to compel on October 23, 2018. This Court granted the motion, but PHI did not fully comply. On February 14, 2019, Masimo had to file a motion to enforce this Court's prior order. This Court again granted Masimo motion. On February 20, 2019, Masimo served a second set of discovery requests, to which PHI again provided deficient responses. Masimo now comes before the Court for a third time, seeking complete responses to interrogatories and requests for production.

PHI refused to disclose PHI's contention regarding who can assert a claim as a potential class member in this case. PHI's contention on this issue is highly relevant to class certification, including typicality, commonality, and adequacy. Masimo repeatedly clarified that it was seeking PHI's contentions regarding how the law applies to the facts of this case, not an abstract legal opinion, but PHI steadfastly refused to disclose its contention.

PHI refused to disclose when PHI's counsel learned that PHI had sold most of its assets. This information will show whether PHI's counsel intentionally misled this Court when it represented PHI was an ongoing chiropractic office. PHI raises no valid objections and, instead, asserts that Masimo should ask the

/ / /

question at depositions of PHI's principals. PHI does not get to choose which discovery mechanisms Masimo uses.

PHI refused to produce documents and information regarding evidence of PHI and PHI's counsel's misconduct in similar cases. The information Masimo seeks—complaints, briefing, and orders relating to sanctions and other misconduct—is highly relevant to whether PHI and PHI's counsel can adequately represent a class. Masimo repeatedly offered to narrow these requests to address PHI's concerns. PHI appeared to agree that was sufficient, only to later refuse to provide any information at all.

PHI refused to produce communications relating to PHI's asset sale, which may shed light on whether PHI sold its claim against Masimo. PHI's assertion that none of the withheld communications are sufficient to contradict PHI's interpretation of the contract is not a basis for withholding them.

PHI also refused to identify the email accounts that PHI spoliated during this litigation. PHI's spoliation is relevant to PHI's adequacy and a potential motion for sanctions.

Masimo spent significant effort to obtain PHI's compliance. Counsel for Masimo spoke to PHI's counsel before and after PHI provided its answers on March 22, 2019. (Declaration of Adam B. Powell, ¶ 9.) The parties also exchanged letters on March 26, April 5, April 9, and April 11. (Powell Decl., Exs. 7, 8, 9, 10.) Thus, Masimo moves to compel.

**B. <u>PHI's Introduction</u>**

In its first set of discovery requests to PHI, which consisted of 111 requests for production, 67 requests for admission, and 13 interrogatories, Masimo repeatedly sought documents via descriptions so vague as to preclude any practical means of searching or so broad as to require PHI to produce virtually every document it had ever created or maintained. Many of these requests were sharply limited by this Court. In its second set of discovery requests, which

consists of another eighty-eight requests for admission, eleven requests for production of documents, and five interrogatories, Masimo has continued its pattern of sending unreasonably vague and overly broad requests to PHI in contravention of the Federal Rules of Civil Procedure. Additionally, in the second set of discovery requests, Masimo is now attempting to use discovery to compel PHI to research and provide its legal positions on various hypotheticals set forth by Masimo. Nonetheless, PHI has not categorically refused to provide substantive responses to most of these requests. On the contrary, it has spent many hours reviewing files, collecting and organizing documents, and preparing its responses.

Additionally, PHI has repeatedly requested that, with regard to the one issue over which the parties do disagree in the second set of discovery requests, the parties seek the informal assistance of the Court. Masimo has flatly rejected these overtures despite the requirement of a "good faith effort" at informal resolution before seeking the assistance of the Court imposed by the Local Rules. *See* Local Rule 37-1 ("Prior to the filing of any motion relating to discovery . . . , counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible.") This demonstrates Masimo's preference for confrontation rather than cooperation in resolving discovery issues. *See Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58 (D. Md. 2008)("compliance with the 'spirit and purposes' of [the] discovery rules requires cooperation by counsel to identify and fulfill legitimate discovery needs, . . . which requires cooperation rather than contrariety, communication rather than confrontation.") Accordingly, PHI respectfully requests that this Court sustain PHI's objections and deny Masimo's motion to compel further responses from PHI relative to these requests.

/ / /

/ / /

## II. CONTENTIONS AND POINTS AND AUTHORITIES

### A. Interrogatory No. 16

Identify who You contend is and is not entitled to assert a claim under the TCPA for the alleged receipt of an unsolicited fax advertisement, including at least with respect to the following categories of persons or entities, and explain why You contend that each category of person or entity is or is not entitled to assert such a claim: (a) An individual addressee of the fax; (b) An employer of an individual addressee; (c) An owner of the receiving fax machine; (d) A lessor of the receiving fax machine; (e) An entity that pays for consumables for the fax machine (such as electricity, ink, toner, or paper); (f) A subscriber to the receiving fax telephone number; (g) A non-addressee recipient of the fax whose privacy interests may have been invaded by the unsolicited fax; and (h) A user of the fax machine whose receipt of other faxes may have been delayed

**ANSWER:** Objection. This Interrogatory is not relevant to any claims or defenses in this matter and/or proportional to the needs of the case insofar as it seeks an advisory opinion from PHI as to who would not be entitled to assert claims for violations of the Junk Fax Prevention Act. Physicians Healthsource's contention is that it has the right to assert a claim against Masimo in regard to the Masimo Faxes directed to the office fax number/office fax machine of Physicians Healthsource because it was the subscriber of the telecommunications services account that included the number to which the Masimo were sent, the owner/lessor of the fax machine that received the Masimo Faxes, the owner of the office supplies consumed by the Masimo Faxes, and the employer of the person whose name appeared on the Masimo Faxes.

### 1. **Masimo's Contentions and Points of Authority**

This Interrogatory seeks PHI's contention regarding who can assert a claim under the TCPA in this case. This information is relevant because PHI seeks to certify a class comprising: "All persons or entities who were successfully sent one or more faxes on or after four years prior to the filing of this action …" (Powell Decl., Ex. 12 at 4). Masimo properly seeks PHI's contention regarding which entities or individuals PHI contends may have causes of action. This will allow Masimo to develop evidence and arguments regarding whether PHI has met its burden to establish the elements of Rule 23, including that PHI's claims are typical of the proposed class members, that PHI can adequately represent the interests of the proposed class members, and that there is commonality among the claims of the proposed class members. To do so, Masimo needs to know who PHI contends may assert a claim in this case.

PHI's proportionality objection is also without merit. Masimo merely seeks PHI's contention as to who can assert a claim in this case.

During the conference of counsel, PHI asserted this Interrogatory seeks pure conclusions of law. (Powell Decl., Ex. 9 at 1–2, Ex. 11 at 1–2.) PHI waived that objection by not raising it in PHI's written answer. *See* Fed. R. CIV. P. 33(b)(4). Thus, this Court need not consider that objection. *See Ramirez c. County of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) ("the court will not consider any objections that were not asserted in the responding party's original discovery responses …")

Moreover, "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." FED. R. CIV. P. 33(a)(2). Masimo's Interrogatory No. 16 is proper because it seeks PHI's contention regarding how Rule 23 applies to the facts of this case. *See Moser v. Health Insurance Innovations, Inc.*, No. 17-cv-01127-WQH(KSC), 2018 WL 6735710, at *16-17 (S.D. Cal. Dec. 21, 2018) (ordering plaintiff to

respond to contention interrogatory seeking identification of "any person that plaintiff believes "may be a member of the purported class," as well as any information used to make this determination").

Nonetheless, to avoid any potential dispute, Masimo proposed that PHI respond to a revised version of Interrogatory No. 16 that expressly clarified Masimo was seeking PHI's contention with respect to this case only:

> Identify who You contend is entitled to assert a claim under the TCPA ***in this case***, including at least with respect to the following categories of persons or entities, ***and explain why You contend that each category of person or entity is or is not entitled to assert such a claim as a potential class member in this case***: (a) An individual addressee of the fax; (b) An employer of an individual addressee; (c) An owner of the receiving fax machine; (d) A lessor of the receiving fax machine; (e) An entity that pays for consumables for the fax machine (such as electricity, ink, toner, or paper); (f) A subscriber to the receiving fax telephone number; (g) A non-addressee recipient of the fax whose privacy interests may have been invaded by the unsolicited fax; and (h) A user of the fax machine whose receipt of other faxes may have been delayed.

(Powell Decl., Ex. 10 at 1.)[1] PHI continued to refuse to respond even after this clarification. Thus, PHI's belated objection is mere pretense, and PHI simply does not want to provide the requested information. (Powell Decl., Ex. 11 at 1-2.) The Court should order PHI to provide a full response to Interrogatory No. 16 as modified above.

/ / /

/ / /

---

[1] All emphasis is added unless stated otherwise.

**2. <u>PHI's Response</u>**

In reviewing Interrogatory No. 16, this Court must also consider Interrogatory No. 15, which was very similar and to which PHI set forth its contentions with respect to the basis for its claim against Masimo. In Interrogatory No. 15, Masimo requested that PHI "[i]dentify all persons or entities that You contend are entitled to assert a claim against Masimo under the TCPA for the alleged faxes attached to the Complaint . . . and explain why You contend that person or entity is entitled to assert such a claim against Masimo." *See* Masimo's Second Set of Interrogatories (Exhibit 4), Interrogatory No. 15. PHI responded as follows:

**ANSWER: Physicians Healthsource, Inc. The Junk Fax Prevention Act does not state who has the right to assert a claim in regard to a facsimile advertisements sent in violation of the law. However, courts have consistently found that the owner of the equipment and/or supplies utilized by a facsimile advertisement, the subscriber of the telecommunications services account that included the number to which the facsimiles were sent, and the "recipient" all have standing to assert claims for alleged violations of the Junk Fax Prevention Act. *E. g.* <u>IMHOFF Inv., L.L.C. v. Alfoccino, Inc.</u>, 792 F.3d 627, 631 (6th Cir. 2015)("Though the TCPA does not expressly state who has a cause of action to sue under its provisions, its descriptions of the conduct it prohibits repeatedly refer to the 'recipient' of the unsolicited fax, 47 U.S.C. §227(b)(1)(C),(b)(2)(D), and in enacting the TCPA, Congress noted that such fax advertising 'is problematic' because it 'shifts some of the costs of advertising from the sender to the recipient' and 'occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.' H.R. Rep. 102-317 at 10 (1991)."); <u>True Health Chiropractic, Inc. v. McKesson Corp.</u>, 896 F.3d 923, 926 (9th Cir. 2018)("The TCPA forbids certain unsolicited advertisements sent via phone or facsimile ("fax"). 47 U.S.C. § 227(b)(1). In enacting the TCPA, 'Congress intended to remedy a number of problems associated with junk faxes, including the cost of paper and ink, the difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems.'"); <u>Sandusky Wellness Ctr., Ltd. Liab. Co. v. Medtox Sci., Inc.</u>, 821 F.3d 992, 997 (8th Cir. 2016)("The TCPA prohibits sending an unsolicited fax advertisement to a "recipient." . . . The best objective indicator of the "recipient" of a fax is the person who subscribes to the fax number.")**

**Physicians Healthsource, Inc. was the owner/lessor of the fax machine that received the Masimo Faxes sent to (513) 922-2009, the owner of the office**

**supplies consumed by the Masimo Faxes sent to (513) 922-2009, the subscriber of the telecommunications services account that included the number (513) 922-2009, and the employer of the person whose name appeared on the Masimo Faxes sent to (513) 922-2009. With the exception of someone acting in a representative capacity, Physicians Healthsource does not contend that any other person is entitled to assert a claim against Masimo for the Masimo Faxes directed to Physicians Healthsource's office fax machine/office fax number.**

Via Interrogatory No. 16, Masimo sought to compel PHI to express legal opinions "concerning who . . . is and is not entitled to assert a claim under the TCPA" for various hypothetical categories of fax recipients such as "A Non-addressee recipient of the fax whose privacy interests may have been invaded by the unsolicited fax." *See* Masimo's Second Set of Interrogatories (Exhibit 4), Interrogatory No. 16. This is not the proper scope of an interrogatory. *E.g. Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D.D.C. 1989)("HHS' factual scenario interrogatories effectively ask the plaintiffs to express their legal positions on what are, in essence, hypotheticals. Rule 33(b) does not permit such discovery."); *see also* 10A John Kimpflen, *et al., Federal Procedure*, § 26:583 (sustaining an objection to an interrogatory that sought a legal opinion as "it is pointless to ask a layperson to expound legal theories")(*cited in Encon Int'l, Inc. v. Garrahan*, No. 11-2137-KGS, 2013 U.S. Dist. LEXIS 201747, at *6 n.6 (D. Kan. Jan. 16, 2013)).

Likewise, it is well-settled that "interrogatories may not extend to issues of 'pure law.'" USCS Fed Rules Civ Proc R 33, Notes of Advisory Committee of 1970 Amendments; *see also Encon Int'l, Inc. v. Garrahan*, No. 11-2137-KGS, 2013 U.S. Dist. LEXIS 201747, at *5-7 (D. Kan. Jan. 16, 2013)("Rule 33(b) provides the authority for parties to utilize contention interrogatories, [and] embodied within the language is the notion that a distinction exists between permissible contention interrogatories and inquiries into issues of pure law."); *Trabon Eng'g Corp. v. Eaton Mfg. Co.*, 37 F.R.D. 51, 57 (N.D. Ohio 1964)("an interrogatory calling for a factual inference or conclusion is proper, whereas an interrogatory calling for a legal conclusion is objectionable.")

Moreover, "interrogatories are used in order for a party to obtain from another adverse party the information that he may have in his possession. . . . a litigant may not compel his adversary to go to work for him." 1967 AMC 1592, 41 F.R.D. 245; *see also Riss & Co. v. Association of American R.*, 23 F.R.D. 211, 213 ("an interrogated party must furnish relevant information in his possession which can be obtained without great labor or expense. . . . burdensome research is properly considered beyond the scope of Rule 33.")(*internal quotation omitted); Cinema Amusements, Inc. v. Loew's, Inc.*, D.C.D.Del.1947, 7 F.R.D. 318, 321 ("an interrogated party need only answer matters of fact within his knowledge and is not required to make research and compilation of data not readily known to him.") PHI properly stated its contention with respect to the basis of its own claim in response to Interrogatory No. 15. It should not be compelled to research hypothetical legal issues posed by Masimo, prepare a white paper of that research, and then provide Masimo with that work product in response to a single interrogatory. Accordingly, this Court should decline Masimo's motion to compel any further response from PHI in response to Interrogatory No. 16.

**B. <u>Interrogatory No. 18</u>**

> Describe the complete circumstances surrounding You ceasing to provide medical services on or about March 23, 2018, including (a) the identity of any individual or entity that purchased any portion of PHI, (b) what assets the individual or entity purchased, (c) the date of the purchase, (d) the purchase amount and other material terms of the purchase, (e) the termination dates of all individuals who were PHI employees as of March 1, 2018, (f) a description of PHI's current business purpose, if any, and (g) the date each of Your Counsel learned of the purchase

/ / /

> **RESPONSE:** Objection. This Request is overly broad, unduly burdensome, not relevant to any claim or defense, and/or is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

**1. <u>Masimo's Contentions and Points of Authority</u>**

This Interrogatory seeks information about PHI's sale of most of its assets. This Court previously expressed its concern about this topic and indicated it did not have enough information at the time. The Court stated:

> The issue of the client [PHI] having been sold and its emails being shut down or whatever, I don't have enough facts at this time to understand how or when or why that happened, but I feel like that--the burden of any ambiguity or problems that are raised by that fact to some degree should be borne by your client [PHI] because that wasn't clarified at the November hearing when we could have addressed it in a more thorough manner.

(Powell Decl., Ex. 18 at 70:7-14.) Masimo sought the missing information in this Interrogatory and Requests for Production Nos. 119 and 122 (which are addressed below).

PHI refused to disclose information responsive to part (g), the date each of PHI's counsel learned of the sale. (*See* Powell Decl., Ex. 9 at 2-3.) Masimo understands from PHI's counsel's letters that PHI is withholding this information on the basis of relevance and/or attorney-client privilege. (Powell Decl., Ex. 9 at 3, Ex 10 at 2.)

The date(s) each of PHI's counsel learned of the purchase are relevant to adequacy. *See* FED. R. CIV. P. 23(a)(4), (g)(2) (class representative and counsel must be adequate). On or around March 21, 2019, PHI sold most of its assets. (*See* Powell Decl., Ex. 13.) After the sale, PHI no longer provided medical services and no longer has employees. As PHI explained, "the basic purpose of

PHI after the sale of its assets to Pain Specialists was to collect PHI's outstanding receivables and wind up PHI's ongoing affairs, which included the prosecution of litigation matters such as this [case]." (Powell Decl., Ex. 9 at 2.)

However, PHI repeatedly represented to this Court that it was a functioning chiropractic office long after the sale. For example:

- On July 23, 2018, PHI told the Court it was "a chiropractic clinic located in Ohio." (Powell Decl., Ex. 15 at 2.)
- On October 23, 2018, PHI stated: "PHI is a medical office that has operated ***continuously*** since approximately 1999." (Powell Decl., Ex. 14 at 3.)
- At the hearing before this Court on November 14, 2018, PHI stated: "PHI is a medical office that's been [*sic*] existence for a little over 20 – about 20 years now. They've got about ten employees at any one time." (Powell Decl., Ex. 17 at 19:4-6.)
- Just days ago, on April 12, 2019, PHI's counsel stated in a signed declaration that Drs. Ruch and Elwert are "the only physicians ***currently employed by PHI*** . . . ." (Powell Decl., Ex. 20 ¶ 4.) Counsel also referenced "PHI's facility" and said he discussed issues with "three of the employees present" in March of 2019. (*Id.* ¶¶ 14-15.)

These representations to the Court were false. PHI ceased being a functioning chiropractic office more than one year ago in March of 2018. (Powell Decl., Ex. 16 at 4). PHI also recently told Masimo that "all of PHI's employees did become employees of Pain Specialists upon the transfer of the assets from PHI to Pain Specialists." (Powell Decl., Ex. 9 at 2.)

It appears counsel knew the statements were false at the time. PHI's counsel's recent declaration explained that he had numerous conversations with Dr. Ruch through July of 2018 to discuss PHI's discovery responses. (*See* Powell

Decl., Ex. 20 ¶ 6.) Thus, PHI's counsel should have known of the sale no later than July of 2018. There are only two possibilities: either PHI's counsel did know and misled the Court, or PHI's counsel did not know because PHI's principals misled or concealed material information from their counsel. If PHI's counsel knew that these statements were false at the time they were made, counsel is inadequate. If PHI concealed this information, PHI is inadequate.

PHI's objection on the basis of the attorney-client privilege is meritless. PHI bears the burden of proving the attorney-client privilege applies. *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). The privilege protects confidential communications for the purpose of receiving legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981). It does not protect facts that underlie those communications or the circumstances that surround them, including the date of such communications, which are routinely disclosed to evaluate whether a communication is actually privileged. *See, e.g.*, *Securities and Exchange Commission v. Coldicutt*, No. 17-cv-03888-CAS(AFM), 2017 WL 2485383, at 1 (C.D. Cal. June 8, 2017).

PHI cannot claim the underlying information—that PHI was sold and stopped providing medical services in March 2019—is privileged. Nor can it claim privilege in the date(s) PHI's counsel learned of the sale. That is, at most, a circumstance surrounding an allegedly privileged communication, not a communication itself, and is therefore not privileged. Moreover, PHI's counsel could have learned of the sale from some other source.

PHI suggested Masimo ask Dr. Ruch and Dr. Elwert about these dates during their depositions. (Powell Decl., Ex. 9 at 3, Ex. 11 at 2.) That offer is meaningless because PHI asserted this information is privileged and stated that it would not allow Dr. Ruch or Dr. Elwert to answer questions that it asserts seek privileged information. (*Id.*) It is also meaningless because Drs. Ruch and Elwert may not know when PHI's counsel learned of this information. Drs. Ruch and

Elwert may not remember when, and if, they told their counsel about the sale, and would not know if their counsel learned it through some other source.

PHI's offer appears to be an attempt to avoid providing the requested information by limiting Masimo to asking individuals who may not know or remember the precise dates. Masimo asked for this information in an interrogatory precisely so that PHI could, and would have an obligation to, conduct a reasonable investigation as to the facts. *See AECOM Energy & Construction, Inc. v. Ripley*, No. 17-cv-05398, 2018 WL 4705914, at *3 (C.D. Cal. Apr. 26, 2018) ("[a] party answering interrogatories cannot limit his answers to matters within his knowledge and ignore information reasonably available to him or under his control") (citation omitted).

The Court should order PHI to disclose the date(s) each of its counsel learned of the purchase agreement.

**2. <u>PHI's Response</u>**

Much as Interrogatory No. 16 cannot be viewed without reference to Interrogatory No. 15, Interrogatory No. 18 cannot be viewed without reference to Request for Production Nos. 118 and 119, which sought PHI's "agreement(s) with Cincinnati Pain Specialists that refer or relate to purchasing some or all of PHI's assets" and "all communications regarding the "agreement(s)" respectively. PHI responded to Requests for Production No. 118 by producing the contract by which PHI sold certain of its assets to Pain Specialists of Cincinnati (captioned "Purchase of Business Agreement"). *See* Masimo's Second Set of Requests for Production of Documents (Exhibit 6), Requests Nos. 118, 119. The Purchase of Business Agreement is a twenty-two page document that sets forth the complete terms of the asset sale from PHI to Cincinnati Pain Specialists.

Fed. R. Civ. Pro 34(b) expressly allows an interrogatory to be answered by "specifying the record that must be reviewed . . . to enable to the interrogating party" to "ascertain[] the answer". As the details sought by Masimo in

Interrogatory No. 18 are largely addressed by the Purchase of Business Agreement itself, PHI's production and identification of the Purchase of Business Agreement is a sufficient answer to this Interrogatory.

The only detail sought by Masimo that is not addressed by the Purchase of Business Agreement is "the date each of Your Counsel learned of the purchase." *See* Masimo's Second Set of Interrogatories (Exhibit 4), Interrogatory No. 18. This detail has no connection to any claim or defense in this matter and, therefore, no clear relevance. Moreover, PHI has no personal knowledge when each of its counsel learned of the sale of assets from PHI to Pain Specialists of Cincinnati. As such, requiring PHI to investigate and provide this information would compel PHI to poll each of its attorneys to ascertain when they may have learned of the date of the sale of PHI's asset sale to Pain Specialists of Cincinnati and then divulge information protected by the attorney-client privilege. Given the questionable relevance of this information, both the burden of collecting this information and the intrusion into the attorney-client relationship it would mandate are not warranted. Nonetheless, PHI has not categorically refused to address this subject. Instead, it has offered to address when (and with what attorneys) it has discussed the Purchase of Business Sale Agreement when its representatives are deposed. The Court should find that PHI's response, along with its offer to provide deposition testimony on this subject, are sufficient and decline to compel any further response to Interrogatory No. 18.

**C. <u>Interrogatory No. 19 and Request for Production No. 112</u>**

**<u>Interrogatory No. 19:</u>**

If You and/or Your Counsel have ever been sanctioned or found to have engaged in misconduct, identify: (a) the case name and number, (b) the court, (c) the date of the order/finding, (d) the nature of any sanction; (e) the amount of any monetary sanction, (f) the content of the order/finding, and (g) any written order(s) and/or hearing transcript(s)

concerning the order/finding.

**RESPONSE:** Objection. This Request is overly broad, unduly burdensome, not relevant to any claim or defense, and/or is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

**Request for Production No. 112:**

All court orders that found You or any of Your Counsel (a) should be sanctioned, (b) engaged in misconduct, and/or (c) were inadequate to represent a class.

**RESPONSE:** Objection. This Request is overly broad, unduly burdensome, not relevant to any claim or defense, and/or is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

**1. Masimo's Contentions and Points of Authority**

These requests seek information regarding, and copies of, court orders sanctioning PHI or PHI's counsel and court orders finding that PHI or PHI's counsel engaged in misconduct or were inadequate to represent a class. PHI objected and refused to produce any information or documents. During the parties' meet and confer, Masimo offered to narrow the requests by limiting the definition of PHI's Counsel to include only: (1) counsel of record, (2) attorneys at Anderson + Wanca ("A+W"), Montgomery Rennie, and Jonson ("MRJ"), and Geragos & Geragos ("Geragos") who have been substantively involved in this case, and (3) attorneys at A+W, MRJ, and Geragos who work substantively on other TCPA cases. (Powell Decl., Ex. 10 at 2.) PHI rejected this compromise. (Powell Decl., Ex. 9 at 3, Ex. 11 at 2.)

These requests are relevant and proportional to the needs of this case. Court orders sanctioning, finding misconduct, or ruling that PHI or its counsel are inadequate are relevant to adequacy. *See* FED. R. CIV. P. 23(a)(4), (g)(2). These

requests are not burdensome or difficult to comply with. Attorneys who have been sanctioned, found to have committed misconduct, or found inadequate should have no difficulty remembering (or at least searching for and finding) those occurrences. The same is true for PHI.

PHI's argument that it would be burdensome to compile all the Court orders finding it and its counsel should be sanctioned, engaged in misconduct, or were inadequate to represent a class shows how relevant this request is.

The requests also provide notice of what is sought by specifying that they seek determinations of sanctions, misconduct, or inadequacy. *See Kaneka Corp. v. Zheijian Medicine Co., Ltd.*, No. 11-cv-02389 SJO (SS), 2016 WL 11266869, at *10 (C.D. Cal. Oct. 18, 2016) ("[t]he test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not"). The Court should order PHI to produce information and documents responsive to these requests.

**2. <u>PHI's Response</u>**

Interrogatory No. 19 and Request for Production No. 112 and patently overbroad, and PHI's objections should be sustained. By the terms of these requests, Masimo seeks to compel "You and Your Counsel" to investigate, search for documents, and disclose any instance or documents in which they "have ever been sanctioned . . . or found to have engaged in misconduct" with no time limitation whatsoever and no clarification of what is meant by "sanction" or "misconduct". If these requests were not already too broad, the "Definitions" that precede them expand their scope dramatically. The term "You" is defined to mean not only Physicians Healthsource itself but also "any principal, officer, director, employee, former employee, servant, agent, attorney, or other representative acting on its behalf". Similarly, the term "Your Counsel" is defined as "the law firms of Anderson & Wanca, Montgomery, Rennie & Jonson,

/ / /

and Geragos & Geragos, as well as any past or present principal, officer, employee, agent, attorney, or other representative purporting to act on its behalf".

As such, to adequately respond to Interrogatory No. 19 and Request for Production No. 112, PHI would have to search for and disclose instances of misconduct involving not only professional matters but also personal issues such as criminal violations, traffic citations, academic discliple, domestic relations proceedings, *etc.* over its entire history. This search would extend to all of PHI's present employees, past employees, the attorneys currently representing it in this matter, any attorney who has represented PHI in other matters, and every person who has ever worked for or even provided services to any of these law firms.

The only defense to which Masimo claims these Requests are pertinent is the adequacy of PHI and its counsel as a class representative. However, in the Ninth Circuit, "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? " *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Masimo's demand to discover every instance of alleged misconduct or sanctions with regard to PHI and its counsel is tenuously, if at all, related to this legal standard.

Instead, these requests are a classic fishing expedition into a matter designed to harass and intimidate PHI and its counsel. *E.g. Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir. 1975)("Segan sought discovery . . . of virtually the entire business history of defendants . . . plaintiff's interrogatories constituted a fishing expedition of large proportions. Judge Cannella properly denied the motion for discovery."); *see also Cohen v. Long Island Lighting Co.*, 1986 WL 9961, *2 (E.D.N.Y. May 20, 1986("Movant has not provided any reason to believe that disclosure of the details of [incidents of alleged misconduct] would lead to the discovery of relevant evidence. Rather, they are simply hopeful that

something helpful might turn up. This is a pure fishing expedition, and is beyond the proper scope of Rule 26".); *see also Newberg on Class Actions* § 15:30 (4th ed. 2002) ("Most courts recognize that far-flung discovery on the adequacy of representation of the plaintiff and class counsel is usually unsuccessful because of the highly questionable relevance of the discovery details sought"); *Cisko v. Commonwealth Edison Co.*, 1995 WL 117989, *2 (N.D. Ill. March 16, 1995) ("[W]e find the 'vague possibility that loose and sweeping discovery might turn up something …' to be insufficient to move the discovery beyond its more natural, localized focus"); *Vakharia v. Swedish Covenant Hospital*, 1993 WL 359952, *1 (N.D. Ill. Sept. 15, 1993) ("The unsupported possibility that this discovery might turn up something does not justify either the inevitable intrusion into confidential matters nor the resultant expansion of discovery").

Finally, although the parties have attempted to resolve this dispute informally, Masimo has refused to formally limit the scope of Interrogatory No. 19 and Request for Production No. 12 or even define what is meant by "sanction" or "misconduct". As recently stated by District Court for the Central District of California, "the right to discovery, even plainly relevant discovery, is not limitless." *Unilin Beheer B.V. v. NSL Trading Corp.*, 2015 U.S. Dist. LEXIS 192143, at *10 (C.D. Cal. Feb. 27, 2015). Further, "[o]verly broad and unduly burdensome interrogatories are an abuse of the discovery process and are routinely denied." *E.g., Cabessa v. Burbank Blvd Apartments Owner, LLC*, 2015 U.S. Dist. LEXIS 174797, at *9 (C.D. Cal. Dec. 9, 2015)*(internal quotation and citation omitted)*. Further, "the court is not obligated to impose limiting constructions on interrogatories that are overbroad, vague, or seek irrelevant information, but may simply deny the request to compel further responses." *Unilin Beheer B.V. v. NSL Trading Corp.*, 2015 U.S. Dist. LEXIS 192143, at *14-15 (C.D. Cal. Feb. 27, 2015). Accordingly, PHI requests that this

/ / /

Court sustain PHI's objections to Interrogatory No. 19 and Request for Production No. 112.

**D. <u>Request for Production No. 113</u>**

> All briefing, declarations, and exhibits relating to any allegation that You or any of Your Counsel (a) should be sanctioned, (b) engaged in misconduct, and/or (c) were inadequate to represent a class.

**RESPONSE:** Objection. This Request is overly broad, unduly burdensome, not relevant to any claim or defense, and/or is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Additionally, this Request does not identify "designated documents" or "describe with reasonable particularity" what documents or things it is seeking as required by Rule 34 of the Federal Rules of Civil Procedure. *E.g. Lopez v. Chertoff*, 2009 U.S. Dist. LEXIS 50419, at *2 (E.D. Cal. June 2, 2009)("Courts tend to find document requests seeking all documents related to a claim or defense as lacking particularity.")(*internal quotation and citation omitted*); *In re Asbestos Products Liability Litigation* (No. VI), 256 F.R.D. 151, 157 (E.D. Pa. 2009)(" All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A).")(*internal quotation and citation omitted); see also Regan—Touhy v. Walgreen Co*., 526 F.3d 641, 650 (10th Cir. 2008)(request for "all documents . . . that refer to, mention or relate in any way to . . . allegations, facts and circumstances concerning the litigation was overly broad.')(*internal quotation and citation omitted); In re Urethane Antitrust Litig.*,, 2008 U.S. Dist. LEXIS 1733, at *21-22

(D. Kan. Jan. 8, 2008)("a discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as "relating to," "pertaining to," or "concerning" to modify a general category or broad range of documents or information. The Courts' decisions reason that such broad language makes arduous the task of deciding which of numerous documents may conceivably fall within its scope.")*(internal quotation and citation omitted)*.

**1. Masimo's Contentions and Points of Authority**

This request is slightly broader than Request for Production No. 112. While Request for Production No. 112 was limited to court orders, this request seeks briefing, along with declarations and exhibits, arguing that PHI or PHI's counsel should be sanctioned, engaged in misconduct, or were inadequate to represent a class. PHI objected to the request and produced no documents. As a compromise, Masimo offered to narrow the request by limiting the definition of PHI's Counsel to include only: (1) counsel of record, (2) attorneys at A+W, MRJ, and Geragos who have been substantively involved in this case, and (3) attorneys at A+W, MRJ, and Geragos who work substantively on other TCPA cases. (Powell Decl., Ex. 10 at 2.) This is the same offer Masimo made above with respect to No. 112.

PHI expressed concern that this request arguably encompassed every brief that included a request for sanctions. Masimo also offered to alleviate that concern by limiting the request to motions that were ***captioned*** as seeking sanctions, contempt, or to enforce court orders, and to limit medical malpractice allegations to Dr. Ruch, Dr. Elwert, and to instances of which Dr. Ruch and Dr. Elwert are aware. (*Id.*) PHI rejected this compromise. (Powell Decl., Ex. 9 at 3, Ex. 11 at 2.)

This request is relevant and proportional to the needs of this case. Briefing, declarations, and exhibits that seek sanctions or allege misconduct or inadequacy

may contain facts that show PHI and/or their counsel are inadequate. *See* FED. R. CIV. P. 23(a)(4), (g)(2). This request is not difficult to comply with. Masimo even offered to limit this request to motions (and supporting declarations and exhibits) that are ***captioned*** as seeking sanctions, contempt, or to enforce court orders. (Powell Decl., Ex. 10 at 2.) The words "sanctions," "contempt," or "enforce" would likely appear in the title of any potentially responsive document. For example, Docket No. 151 in this case is captioned "Joint Stipulation Accompanying Masimo's Motion to Enforce the Court's November 17 Order." That motion, if filed in another case, would be responsive to this request. However, Masimo's original Motion to Compel would not be responsive. (*See* Powell Decl., Ex. 14.)

Masimo also offered to limit the request with respect to medical malpractice claims to Dr. Ruch, Dr. Elwert, and allegations of which the doctors are aware. Thus, Dr. Ruch and Dr. Elwert need only produce allegations of misconduct related to their employees if they are aware of the allegation.

PHI's argument that it would be burdensome to compile evidence about all the instances in which it and its counsel were accused of misconduct confirms the relevance and importance of this request. The Court should order PHI to produce documents responsive to this request.

**2. PHI's Response**

Request for Production No. 113 suffers from the same over-breadth defects as Request for Production No. 112 yet expands its scope even further. In addition to seeking court orders concerning any sanctions or misconduct, Masimo seeks any documents "relating to an allegation that You or Your Counsel (a) should be sanctioned [or] (b) engaged in misconduct". These terms are not defined and have no clear, accepted meaning. Accordingly, PHI has no reasonable means of ascertaining whether a document falls within this scope and, therefore, no reasonable means of conducting a search for such documents.

Federal Rule of Civil Procedure 34 (b)(1) requires the requesting party describe the items to be produced with "reasonable particularity." Fed. R. Civ. P. 34(b)(1). "The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004)(*internal quotation marks omitted*); *see also In re Asbestos Products Liability Litigation* (No. VI), 256 F.R.D. 151, 157 (E.D. Pa. 2009)("'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)."); *Regan—Touhy v. Walgreen Co*., 526 F.3d 641, 650 (10th Cir. 2008)(request for "all documents . . . that refer to, mention or relate in any way to . . . allegations, facts and circumstances concerning [a particular claim or defense] was overly broad.')(*internal quotation and citation omitted).*

Finally, Masimo's unwillingness to formally narrow the scope of requests for production that even it concedes are overly broad places PHI in an untenable position as district courts in California have found that "[p]roviding conditional responses to discovery requests is improper . . . and ultimately has the effect of waiving Plaintiff's objections to the discovery requests." *Sherwin-Williams Co. v. JB Collision Servs.*, 2014 U.S. Dist. LEXIS 93368, *6, *7. Accordingly, this Court should not penalize PHI for Masimo's overly-broad requests by forcing it to provide conditional answers that Masimo will likely argue amount to a waiver of any objections. Instead, it should sustain PHI's objection to Request for Production No. 113 and compel Masimo to tailor its discovery requests within the confines of the Federal Rules.

**E. <u>Request for Production No. 114</u>**

> The complaints in any civil, criminal, administrative, or regulatory action alleging that You and/or Your Counsel engaged in fraud, violation of any state or federal securities laws, and/or breach

of fiduciary duties.

**RESPONSE:** Objection. This Request is overly broad, unduly burdensome, not relevant to any claim or defense, and/or is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

**1. Masimo's Contentions and Points of Authority**

This request seeks ***complaints*** filed in civil, criminal, administrative, or regulatory actions alleging that PHI or PHI's counsel committed fraud, violated state or federal securities laws, or breached a fiduciary duty. PHI objected to the request and produced no documents. As a compromise, Masimo again offered to narrow the request, as it did with respect to Requests For Production Nos. 112 and 113, by limiting the definition of PHI's Counsel to include only: (1) counsel of record, (2) attorneys at A+W, MRJ, and Geragos who have been substantively involved in this case, and (3) attorneys at A+W, MRJ, and Geragos who work substantively on other TCPA cases. (Powell Decl., Ex. 10 at 2.) PHI rejected this compromise. (Powell Decl., Ex. 9 at 3, Ex. 11 at 2.)

This request is relevant and proportional to the needs of this case. PHI and PHI's counsel seek to represent a class. Complaints of fraud, violations of securities laws, and breaches of fiduciary duties are relevant to PHI and its counsels' ability to adequately discharge their duties to the class. *See* FED. R. CIV. P. 23(a)(4), (g)(2). Class members would also want to know about allegations of fraud and breach of fiduciary duty in determining whether they wanted to be represented by PHI's counsel. As one example of concerning conduct, in *Physicians Healthsource, Inc. v. Allscripts Healthcare Solutions, Inc. et al.*, No. 12-cv-03233 (N.D. Ill.), PHI testified that it expected to use the proceeds from any ***class settlement*** to pay its ***personal legal costs*** in a separate arbitration. (Powell Decl., Ex. 19 at 84:12-85:3.) That would have been a fraud on the class.

Finally, this request should not be burdensome. Attorneys who have been the target of complaints of fraud or breach of fiduciary duties should have no difficulty remembering (or at least searching for) each occurrence. The same is true for PHI. PHI's argument that it would be burdensome to compile all the instances in which it and its counsel were accused of fraud or breach of fiduciary duty shows the relevance and importance of this request.

This request provides notice of what is sought by specifying that it seeks certain types of complaints alleging certain types of misconduct. *See Kaneka Corp.*, 2016 WL 11266869, at *10 ("[t]he test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not"). The Court should order PHI to produce responsive documents.

**2. <u>PHI's Response</u>**

Request for Production No. 114 suffers the same vagueness and over-breadth issues as Requests for Production Nos. 112 and 113. The adequacy requirement is not an open-ended invitation to examine the entire history of the class representative or its counsel for general instances or misconduct or bad character collateral to the case. *See Del Campo v. Am. Corrective Counseling Servs., Inc.,* 2008 U.S. Dist. LEXIS 106837 (N.D. Cal.), *15 ("unsavory character or credibility problems will not justify a finding of inadequacy unless related to the issues in the litigation.")(*internal quotation and citation omitted); see also MyFord Touch Consumer Litig*., 2016 U.S. Dist. LEXIS 179487, *36 ("credibility issues will defeat [adequacy] only where those credibility problems are directly relevant to the issues in the case, and are so sharp as to jeopardize the interests of absent class members.")(*internal quotation and citation omitted); Wilcox v. Swapp*, 2019 U.S. Dist. LEXIS 12627, *11-12 ("Defeating [adequacy] with credibility issues is an extremely difficult standard to satisfy and is usually limited to flagrant cases where putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the

facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.")(*internal quotation and citation omitted).* Masimo's attempt to discover any instances of misconduct by PHI or any of its counsel is well beyond the reasonable scope of discovery as any "inquiry . . . into the representatives' personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Jane B. v. New York City Dep't of Social Services*, 117 F.R.D. 64, 71. Request for Production No. 114 not only seeks discovery regarding matters collateral to this case, but expands this inquiry to seek discovery regarding the conduct of opposing counsel.

In short, the legal issue with respect to adequacy is "will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? " *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Masimo's fishing expedition into collateral instances and even allegations of misconduct against PHI and its counsel is untethered to this legal standard, overly broad, and well beyond the reasonable scope of discovery.

**F. <u>Request for Production No. 119</u>**

> All communications regarding the agreement(s) with Cincinnati Pain Specialists that refer or relate to purchasing some or all of PHI's assets.
>
> **RESPONSE:** Objection. This Request is not relevant to any claim or defense and/or is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Further, this Request seeks communications that may be protected by the attorney/client privilege.

**1. <u>Masimo's Contentions and Points of Authority</u>**

Request for Production No. 119 seeks communications relating to PHI's sale of most of its assets in March of 2018. PHI objected to the request and

produced no documents. Masimo explained to PHI that it only sought communications between the seller and the purchaser regarding the asset sale, which would not include communications between either party and that party's separate counsel. (Powell Decl., Ex. 8 at 2.) However, PHI still refused to produce any documents. (Powell Decl., Ex. 9 at 3-4, Ex. 11 at 2-3).

The March 2018 sale is significant because PHI may have sold its alleged claim against Masimo. If so, PHI lacks standing to litigate this case. PHI's communications with the purchaser about the contract are relevant because the contract states PHI will sell certain "Assets" and not certain "Excluded Assets." (Powell Decl. Ex. 13 at ¶1(b). The contract defines "Assets" as including seven items and "Excluded Assets" as excluding three items. (*Id.* at ¶¶1(a), 1(d).) PHI's claim against Masimo does not appear to fall within the definition of "Assets" ***or*** "Excluded Assets." Thus, communications regarding the scope of the sale, and particularly whether the alleged claim was intended to be included in the "Assets" or the "Excluded Assets" category, are relevant to whether PHI has standing.

PHI incorrectly asserts that parol evidence is *per se* irrelevant to the contract's interpretation. Under Ohio state law, parol evidence is admissible to resolve ambiguity in contracts. *See Shifrin v. Forest City Enterprises, Inc.*, 597 N.E. 2d. 499, 501 (Ohio 1992). This is true regardless of whether the contract contains an integration clause. *See, e.g.*, *Doody Company v. Montgomery Ward and Co., Inc.*, No. 83-ap-00254, 1984 WL 5717, at *4 (Ct. App. Ohio Apr. 26, 1984) ("the integration clause, which is really a statement in the contract of the rationale of the parol evidence rule, and the agreement that the contract is complete in itself, does not exclude parol evidence to explain ambiguities in the contract"). Whether PHI's alleged claim against Masimo is an "Asset," an "Excluded Asset," or something else, is ambiguous. Communications relating to the contract are therefore potentially relevant to the contract's interpretation.

/ / /

At the March 2019 hearing, this Court asked PHI about "the issue of the bulk sale of PHI's assets to Pain Specialists of Cincinnati" and whether "your client still has the right to pursue this action." (Powell Decl., Ex. 18 at 15:4-9.) PHI assured the Court that it "sold essentially the tangible assets of the enterprise" and that PHI maintained the litigation assets. (*Id.* at 15:10-16:7.) However, the purchase agreement is not so clear, and said nothing about litigation assets even though it expressly excluded other assets. Masimo seeks information to resolve that ambiguity in the contract. PHI is welcome to dispute the admissibility of its communications should Masimo seek to introduce them, but it cannot refuse to produce them. The Court should order PHI to produce the communications.

**2. <u>PHI's Response</u>**

PHI's objections to Request for Production No. 119 should be sustained for two reasons. First, any communications between PHI and its counsel relative to the Purchase of Business Agreement are plainly covered by the attorney-client privilege. Although Masimo acknowledged this in the meet-and-confer session, it has refused to formally withdraw the Request. As such, if PHI produces some communications while reserving its right not to product attorney-client communications, Masimo could then argue that this conditional response waives the objection, demand a privilege log, *etc.* *See Sherwin-Williams Co. v. JB Collision Servs.*, 2014 U.S. Dist. LEXIS 93368, *6, *7 ("[p]roviding conditional responses to discovery requests is improper . . . and ultimately has the effect of waiving Plaintiff's objections to the discovery requests.") Masimo cannot fairly demand that a discovery request that plainly seeks attorney-client communications be enforced subject to its informal assurance that it is not actually demanding attorney-client communications and will not subsequently seek to compel the production of such communications. Instead, PHI's objection should be sustained and Masimo compelled to substitute a discovery request that does not seek documents protected by the attorney-client privilege.

Second, even if Request for Production No. 119 were limited to communications between PHI and Pain Specialists of Cincinnati, these communications cannot be relevant to this case. Paragraph 54 of the Purchase of Business Agreement states that "[s]tatements or representations which may have been made by any Party to this Agreement in the negotiation stages . . . are declared to be of no value to either Party. Only the written terms of this Agreement will bind the parties." Moreover, the Purchase of Business Agreement specifies that Ohio law applies to the interpretation of the agreement, and, under Ohio law, "the intent of the parties to a contract resides in the language they chose to employ in the agreement. . . . parol evidence cannot be admitted if its effect would be to vary or to contradict the written terms of the contract." *Casserlie v. Shell Oil Co.*, 2007-Ohio-2633, ¶ 52 (Ct. App.)

The only apparent defense to which this matter could relate is standing on the apparent theory that PHI sold its right to assert a claim against Masimo for its receipt of the Masimo faxes to Pain Specialists of Cincinnati under the terms of the Purchase of Business Agreement. This argument is belied by the terms of the Purchase of Business Agreement and the conduct of PHI and Pain Specialists of Cincinnati. As for the terms, the Purchase of Business Agreement lists the specific assets being sold to Pain Specialists, which "consist of the following . . . equipment . . . inventory . . . sales orders . . . Accounts Receivable in excess of $80,000, aged less than 90 days" [and] "Phonelines and digital assets." Nowhere on this list is pending or potential lawsuits, claims for alleged violations of the TCPA or JFPA, or litigation matters in general. Moreover, PHI's continued prosecution of this claim plainly demonstrates that it did not intend to sell its claim against Masimo to Pain Specialists of Cincinnati via the Purchase of Business Agreement. Accordingly, there is no ambiguity concerning whether PHI sold its right to assert a claim against Masimo for alleged violations of the JFPA to Pain

/ / /

Specialists of Cincinnati. Accordingly, this Court should sustain PHI's objection to Request for Production No. 119.

**G. Request for Production No. 122**

> Documents sufficient to identify the email addresses to which You had access at any time after You filed this case.
>
> **RESPONSE**: PHI has identified no documents responsive to this Request in its possession, custody, or control at this time. However, in an effort to provide a substantive response, PHI employees were not regularly issued company email accounts. The only email addresses associated with former PHI employees that remain open at present belong to Andrea Hollinger and Kathleen Curtis. Those email addresses are andreah@phspain.com and kathleenc@phspain.com. Additionally, Dr. Ruch and Dr. Elwert occasionally used personal e-mail addresses for the business of PHI, and they continue to have access to some of these e-mail addresses.

**1. Masimo's Contentions and Points of Authority**

During an earlier hearing, PHI argued that Masimo had not served discovery requests seeking an identification of email accounts to which PHI no longer has access. (Powell Decl., Ex. 18 at 26:3-4.) Masimo therefore served Request for Production No. 122, which seeks documents sufficient to identify the email addresses to which PHI had access when it filed this case and no longer does. PHI raised no objections, but only identified the email addresses to which it currently has access.

Counsel for PHI later wrote that "in my review of PHI document [*sic*], I have noted the existence of a PHI work email account that belonged to Shelly Van Hook and another that belonged to Gearline Monhollen." (Powell Decl., Ex. 9 at 4.) Counsel for PHI then wrote that "PHI did not maintain any records

/ / /

concerning the existence of email accounts assigned to PHI employees that no longer exist." (Powell Decl., Ex. 11 at 3.)

PHI has not however, asserted that it has conducted a reasonable search for the missing accounts and Masimo does not believe PHI has done so. In a declaration dated April 12, 2019, PHI's counsel described his search for emails responsive to Masimo's earlier discovery requests. (Powell Decl., Ex. 20 ¶¶ 9-11.) While the prior court order related to different discovery requests, the declaration does not mention PHI searching for the missing email accounts.

This request is relevant to PHI's counsel's adequacy because it bears on whether PHI spoliated evidence, and Masimo's ability to conduct further discovery including recovering and searching the missing email accounts. It is also not difficult to satisfy. Counsel for PHI could identify the documents or information sought by reviewing the "To", "From", and "cc" lines in the PHI emails to which PHI has access. Those email headers likely contain the other PHI email addresses that existed at the time. Masimo is even willing to perform this task itself if PHI provides Masimo with PHI's emails.

Masimo is particularly concerned because this Court ordered PHI to search its emails (Powell Decl., Ex. 17 at 41:1-11) and PHI has not produced ***a single email***. This Court specifically expressed concern over the asset sale and explained that "the burden of any ambiguity or problems that are raised by that fact to some degree should be borne by your client [PHI] because that wasn't clarified at the November hearing when we could have addressed it in a more thorough manner." (Powell Decl., Ex. 18 at 70:7-14.) The Court should order PHI to produce responsive documents or identify all missing email accounts in the text of its response.

**2. <u>PHI's Response</u>**

PHI's response to Request for Production No. 122 is sufficient as PHI did not maintain any records concerning the existence of email accounts assigned to

PHI employees that no longer exist. Moreover, the description "[d]ocuments sufficient to identify the email accounts to which [PHI] had access at any time" does not describe any documents with reasonable particularity. *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004)("The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not.")(*internal quotation marks omitted*) As such, PHI has no reasonable means of identifying or searching for such documents.

Nonetheless, in an effort to provide the requested information, PHI has offered to identify, in writing, any discontinued email addresses it finds or discovers along with the identity of the person(s) associated with such accounts. It has already done so via the letters exchanged between counsel relative to these discovery requests. Moreover, the person most knowledgeable about the existence of old email accounts for PHI's employees is Andrea Hollander, whom Masimo is seeking to depose. Ms. Hollander can provide testimony concerning which employees of PHI were assigned email addresses, when these email addresses were created and discontinued, *etc.* Accordingly, this Court should find that PHI's response to Request for Production No. 122 is sufficient and decline to order any further response.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 24, 2019

By: /s/ *Adam B. Powell*
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Stephen Larson
Adam B. Powell

Attorneys for Defendants
MASIMO CORPORATION and
MASIMO AMERICAS, INC.

ANDERSON + WANCA

Dated: April 24, 2019

By: */s/ Matthew E. Stubbs (with permission)*

Brian J. Wanca
Ross M. Good
Ryan M. Kelly
Glenn Hara

MONTGOMERY, RENNIE & JONSON
Matthew E. Stubbs

Attorneys for Plaintiffs
PHYSICIANS HEALTHSOURCE, INC.
and RADHA GEISMANN M.D. P.C.