Joseph R. Re (SBN 134479)
joe.re@knobbe.com
Stephen C. Jensen (SBN 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (SBN 208527)
ben.katzenellenbogen@knobbe.com
Stephen W. Larson (SBN 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone:  (949) 760-0404
Fax:      (949) 760-9502

Adam B. Powell (SBN 272725)
adam.powell@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
12790 El Camino Real
San Diego, CA 92130
Phone:  (858) 707-4000
Fax:      (858) 707- 4001

Attorneys for Defendants
MASIMO CORPORATION and
MASIMO AMERICAS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MASIMO CORPORATION, et al.,<br><br>Defendants. | Case No. 8:14-cv-00001 JVS (ADSx)<br><br>Hon. Judge James V. Selna<br><br>**MEMORANDUM IN SUPPORT OF MASIMO'S MOTION FOR SUMMARY JUDGMENT**<br><br>**HEARING:**<br>Date: October 15, 2019<br>Time: 1:30 p.m.<br>Ctrm: 10C |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ..................................................................................1

II.     BACKGROUND ...................................................................................2

    A.     The Parties...................................................................................2

        1.     Defendant Masimo ............................................................2

        2.     Plaintiff Physicians Healthsource Inc. ("PHI")...................2

        3.     Plaintiff Radha Geismann, M.D. P.C. ("Geismann")............................................................................4

    B.     SK&A Sent Faxes Only To Consenting Doctors .........................5

    C.     PHI and Geismann Provided Consent To SK&A.........................6

        1.     PHI Repeatedly Verified Its Fax Number To SK&A ...................................................................................6

        2.     PHI Provided Consent To Receive Faxes ...........................7

        3.     Geismann Repeatedly Verified Its Fax Number To SK&A ...............................................................................8

        4.     Geismann Provided Consent to Receive Faxes...................8

III.    LEGAL STANDARD .............................................................................9

IV.     ARGUMENT .........................................................................................9

    A.     There Is No Genuine Dispute That Plaintiffs Consented To Receive Promotional Faxes From SK&A ..............................10

        1.     PHI Provided Consent To SK&A To Send It Faxes ..........11

        2.     PHI Cannot Contest It Provided Consent Due To Its Spoliation.....................................................................12

        3.     Geismann Provided Consent To SK&A To Send It Faxes ...............................................................................14

    B.     Plaintiffs Are Outside The Zone Of Interests Congress Intended To Protect With The TCPA .........................................15

        1.     Congress Enacted The TCPA To Prevent Advertisers From Causing Fax Recipients Economic Harm..................................................................16

# TABLE OF CONTENTS
## (*cont'd*)

Page No.

|  |  |  |  |
|---|---|---|---|
| | 2. | PHI Is Outside The Zone Of Interests | 17 |
| | 3. | Geismann Is Outside The Zone Of Interests | 18 |
| C. | | Geismann Lacks Standing | 19 |
| | 1. | Geismann Has No Evidence Of Actual Injury | 19 |
| | 2. | Alleging A Statutory Violation Does Not Establish Injury | 20 |
| D. | | There Is No Genuine Dispute Geismann Was Not Successfully Sent The October 2011 Fax | 21 |
| V. | | CONCLUSION | 23 |

# TABLE OF AUTHORITIES

**Page No(s).**

*ACA Int'l v. Fed. Commc'ns Comm'n,*
  885 F.3d 687 (D.C. Cir. 2018) ................................................................17

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .............................................................................9

*Atencio v. TuneCore, Inc.,*
  2018 WL 6265073 (C.D. Cal. Nov. 13, 2018) ..............................12

*Baird v. Sabre Inc.,*
  995 F. Supp. 2d 1100 (C.D. Cal. 2014) ........................................10

*Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n,*
  852 F.3d 1078 (D.C. Cir. 2017) ....................................................17

*Booth v. Appstack, Inc.,*
  2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ........................10

*Cambridge Electronics Corp. v. MGA Electronics, Inc.,*
  227 F.R.D. 313 (C.D. Cal. 2004) ..................................................20

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) .......................................................................9, 22

*Clarke v. Sec. Indus. Ass'n,*
  479 U.S. 388 (1987) .......................................................................15

*Critchfield Physical Therapy, P.C. v. Techhealth, Inc.,*
  2013 WL 12330489 (E.D. Mo. Feb. 1, 2013) ...............................2

*FCC v. AT&T Inc.,*
  131 S. Ct. 1177 (2011) ...................................................................21

*Fober v. Mgmt. and Tech. Consultants, LLC,*
  886 F.3d 789 (9th Cir. 2018) .........................................................11

*Gorss Motels, Inc. v. Safemark Sys., LP,*
  931 F.3d 1094 (11th Cir. 2019) .....................................................12

# TABLE OF AUTHORITIES
### *(cont'd)*

**Page No(s).**

*Holtzman v. Turza,*
   728 F.3d 682 (7th Cir. 2013).........................................................................21

*Hudson v. Sharp Healthcare,*
   2014 WL 2892290 (S.D. Cal. June 25, 2014)...............................................11

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.,*
   792 F.3d 627, 633 (6th Cir. 2015)................................................................21

*Kennedy v. Allied Mutual Insurance Co.,*
   952 F.2d 262 (9th Cir. 1991).......................................................................22

*Ladow v. U.S.,*
   2010 WL 1740796 (E.D. Wash. 2010).........................................................19

*Leckler v. Cashcall, Inc.,*
   2008 WL 5000528 (N.D. Cal. Nov. 21, 2008)..............................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ....................................................................................15

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ....................................................................................19

*Martinez v. Adir Int'l LLC,*
   2015 WL 12670519 (C.D. Cal. July 7, 2015) ..............................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ......................................................................................9

*Mazza v. Am. Honda Motor Co.,*
   666 F.3d 581 (9th Cir. 2012).......................................................................19

*Montoya v. Orange County Sheriff's Department,*
   2013 WL 12347292 (C.D. Cal. Oct. 15, 2013) ............................................13

*Nelson v. City of Davis,*
   571 F.3d 924 (9th Cir. 2009).......................................................................22

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*,
  254 F. Supp. 3d 1007 (N.D. Ill. 2017) ........................................13

*Physicians Healthsource, Inc. v. Alma Lasers, Inc.*,
  No. 12 C 4978, 2014 WL 6561781 (N.D. Ill. Nov. 20, 2014) ....................13

*Physicians Healthsource, Inc. v. Cephalon, Inc.*,
  340 F. Supp. 3d 445 (E.D. Pa. 2018) ......................................3, 12

*Ray Charles Found. v. Robinson*,
  795 F.3d 1109 (9th Cir. 2015) ..............................................15

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) .................................................13

*In re Rules & Regulations Implementing the TCP Act of 1991 et al.*,
  30 FCC Rcd. 7961 (2015) (Comm'r Pai, dissenting) ...........................17

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  7 FCC Rcd. 8752 (1992) .................................................10, 11

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, et al.*,
  CG Dkt. Nos. 02-278 and 05-338, Order,
  29 FCC Rcd. 13998 (2014) ..................................................17

*S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*,
  690 F.2d 1235 (9th Cir. 1982) ...............................................9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .....................................................20

*Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*,
  2009 WL 4172847 (N.D. Ill. Nov. 23, 2009) ..................................2

*Stoops v. Wells Fargo Bank, N.A.*,
  197 F. Supp. 3d 782 (W.D. Pa. 2016) ...............................16, 17, 18

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Taylor v. Universal Auto Group I, Inc.*,
   2014 WL 2987395 (W.D. WA July 1, 2014) ................................................10

*Telephone Science Corporation v. Asset Recovery Solutions LLC*,
   2017 WL 56634 (N.D. Ill. Jan. 5, 2017) ........................................................17

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   896 F.3d 923 (9th Cir. 2018) ..........................................................10, 16, 21

*United States v. Morton Salt Co.*,
   338 U.S. 632 (1950) ....................................................................................21

*Van Patten v. Vertical Fitness Group, LLC*,
   847 F.3d 1037 (9th Cir. 2017) ...................................... 10, 11, 20, 21

# OTHER AUTHORITIES

47 U.S.C. § 227 ................................................................................................10

Fed. R. Civ. P. 56 ..............................................................................................9

H.R. Rep. No. 102-317, 1991 WL 245201 ................................................16, 20

S. Rep. No. 102-178, *reprinted in* 1991 U.S.C.C.A.N. 1968 ...........................16

Telephone Consumer Protection Act (TCPA) ......................................... *passim*

# I. **INTRODUCTION**

Plaintiffs Physicians Healthsource Inc. ("PHI") and Radha Geismann, M.D. P.C. ("Geismann") assert individual claims under the Telephone Consumer Protection Act ("TCPA") alleging they were sent unsolicited faxes. They also seek to represent a class of persons who were successfully sent similar faxes in October 2011 and April 2012.  The Court should grant summary judgment on Plaintiffs' individual claims for four reasons.

First, there is no genuine dispute that PHI and Geismann consented to receive the faxes at issue.  Masimo asked a marketing company, SK&A Information Services ("SK&A"), to send faxes only to doctors who opted in to receive them.  SK&A routinely verified the fax number for all doctors in its database, including PHI and Geismann. ███████████████████████ ████████████████████████████████████ ████████████ ████████████████████████████████████████████████ ████████████████████████████ PHI and Geismann do not dispute they repeatedly provided and/or confirmed their fax number to SK&A during these calls.  PHI and Geismann also admit that doing so in such circumstances provided consent.  Case law and FCC guidance confirms that volunteering their numbers to SK&A invited promotional faxes.

Second, there is no dispute that PHI and Geismann wanted and intended to receive faxes so they could file TCPA lawsuits.  Both avoided opting out of receiving faxes and, instead, enacted procedures to obtain and save faxes so they can file TCPA lawsuits.  Thus, they cannot bring their claims because they are outside the zone of interests Congress sought to protect with the TCPA.

Third, Geismann lacks standing because it cannot present evidence of injury.  Geismann does not even allege it suffered any injury.

Fourth, Geismann cannot establish it was successfully sent the 2011 fax. Indeed, Geismann alleges it received only the 2012 fax, and has only the 2012

-1-

fax. Geismann does not have fax logs or any other evidence that could show it was successfully sent the 2011 fax.

## II. BACKGROUND

### A. The Parties

#### 1. Defendant Masimo

Masimo is a pioneering medical device company that creates life-saving technologies. Masimo targets its marketing only to health care professionals who want to know about Masimo's products. Masimo rarely sent promotional information by fax, and had a strict policy of sending faxes only to people who opted in to receive them. Ex. 1 at 69:1-70:13; Ex. 2 at 40:19-41:2; Ex. 3 at 29:24-30:9, 32:11-18; Ex. 4 at 59:18-25.[1]

#### 2. Plaintiff Physicians Healthsource Inc. ("PHI")

Plaintiff PHI is a serial class-action plaintiff that has been asserting claims under the TCPA for more than a decade. Ex. 14 at 10-11. PHI has a long history of abusing the legal system and has been sanctioned by courts across the country. *See, e.g., Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*, 2009 WL 4172847 *3 (N.D. Ill. Nov. 23, 2009); *Critchfield Physical Therapy, P.C. v. Techhealth, Inc.*, 2013 WL 12330489 *1 (E.D. Mo. Feb. 1, 2013).

In 2003, PHI tasked its front desk employee, Kathleen Curtis, with collecting all promotional faxes it received. Ex. 6 at 93:17-94:11. One of PHI's principals, Dr. Ruch, instructed Curtis to intercept all promotional faxes addressed to PHI doctors unless the doctor specifically told her they wanted to receive a particular fax. *Id.* at 102:17-103:11. Curtis then sent the faxes to a TCPA attorney. *Id.*

---

[1] All emphasis in quotations is added unless otherwise indicated. All exhibits are attached to the Declaration of Adam B. Powell.

-2-

For years, PHI actively attempted to increase the number of promotional faxes it received.  For example, one of PHI's doctors (Dr. Martinez) specifically agreed that the American Medical Association ("AMA") could allow third parties to send him promotional faxes.  Ex. 15 at 1 (AMA membership records indicating "Faxes Explicitly Allowed" and "No Restrictions on Faxes" that AMA licensees could send to Dr. Martinez at PHI's fax number).  PHI then filed numerous TCPA lawsuits, including this case, based on faxes addressed to Dr. Martinez.  Dkt. 1, Exhibit A; *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 340 F. Supp. 3d 445, 452-53 (E.D. Pa. 2018).  PHI also never attempted to opt out of receiving faxes.  Ex. 6 at 134:21-135:13; Ex. 37 at RFA Nos. 52-54.  In fact, when PHI retained its TCPA counsel in the early 2000s, PHI instructed its employees *not* to opt out of receiving any promotional faxes.  Ex. 6 at 135:17-136:2.

Over the years, PHI has made about $150,000 as a plaintiff in TCPA lawsuits.  Ex. 16 at 6:22-26. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, PHI currently exists as a shell to receive faxes and litigate TCPA cases.

///

///

-3-

### 3.   **Plaintiff Radha Geismann, M.D. P.C. ("Geismann")**

Plaintiff Geismann is another serial TCPA litigant.  *See* Ex. 36; Ex. 10 at 409:4-20.  PHI moved to add Geismann as a plaintiff after this Court held it had already been "established" that PHI and its counsel are "adjudicated liars and [insouciant] litigants."  Ex. 18 at 10:21-23.  Like PHI, Geismann has a history of misusing the legal system. ███████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████

Geismann implemented special procedures to collect promotional faxes to send to its attorneys so they could file TCPA lawsuits.  In particular, Radha Geismann's attorney husband, Greg Geismann, would sit next to Geismann's fax machine, intercept any promotional faxes, and send them to another attorney to file TCPA cases.  Ex. 19 at 31:14-21, 33:2-34:12. ████████████████████████
████████████████████████████████████████████████████████████
████████████     █████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████

Geismann began filing TCPA lawsuits in the early 2000s.  Ex. 10 at 142:17-143:15; Ex. 20.  Geismann had a "blind deal" with its attorney Karl Dickhaus whereby Geismann would send Dickhaus faxes in return for checks.  Ex. 21 at 44:7-11, 48:6-25.  Geismann later replaced him with a different lawyer, Max Margulis.  Ex. 21 at 50:5-51:25.  Margulis filed numerous TCPA lawsuits for Geismann, including at least two lawsuits against defendants with whom Dickhaus had already settled.  Ex. 22 at 7:16-22; Ex. 23.
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

/ / /

-4-

1  █████████. Thus, Geismann currently exists as a shell to litigate previously-

2  filed TCPA cases.

3  **B.   SK&A Sent Faxes Only To Consenting Doctors**

4  This case concerns two faxes dated October 2011 and April 2012.  Dkt.

5  197, Ex. A.  The faxes promoted Masimo's PRONTO® and PRONTO-7®

6  products, which include Masimo's revolutionary technology to measure total

7  hemoglobin without drawing any blood.  *Id.*

8  ████████████████████████████████

9  ██████████████████████████████████████

10  ██████████████████████████████████████

11  ██████████████████████████████████████

12  ██████████████████████████████████████

13  ██████████████████████████████████████

14  ██████████████████████████████████████

15  ██████████████████████████████████████

16  ██████████████████████████████████████

17  █████████████████

18  ████████████████████████████████████

19  ██████████████████████████████████████

20  ██████████████████████████████████████

21  ██████████████████████████████████████

22  ██████████████████████████████████████

23  ██████████████████████████████████████

24  ██████████████████████████████████████

25  ██████████████████████████████████████

26  ██████████████████████████████████████

27  ███████████████████████

28  / / /



"This verification process guarantees that no record is ever added to SK&A's databases until it is telephone-verified at the source by an SK&A Research Associate."  Ex. 27 at MASPHI0072268.

**C.     PHI and Geismann Provided Consent To SK&A**

PHI and Geismann both verified their fax number to SK&A and had policies and procedures showing they provided consent to receive promotional faxes during those verification calls with SK&A.

**1.     PHI Repeatedly Verified Its Fax Number To SK&A**

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ██████████████

10  ## 2. <u>PHI Provided Consent To Receive Faxes</u>

11  PHI has a written policy explaining how employees should respond when

12  asked for PHI's fax number over the phone.  PHI's policy states: "IF YOU

13  RECEIVE A CALL ASKING FOR OUR FAX NUMBER, ASK WHO IS

14  CALLING AND WHY DO THEY NEED IT."   Ex. 29 (capitalization in

15  original).  PHI's witnesses testified they typically followed the policy by asking

16  callers who they were and why they needed PHI's fax number.  Ex. 6 at 120:21-

17  121:13; Ex. 12 at 90:22-91:14.   One employee admitted she may have

18  occasionally provided PHI's fax number without first asking those questions.

19  Ex. 12 at 93:7-18 ("Q. Did you follow it every time? A. No, sir. . . .  You know,

20  did I personally follow it?  Most of the time, absolutely.  Can I say with no

21  reservation that I followed it every call I took?  No, I can't say that.").

22  PHI's fax policy states: "IF YOU GIVE [the fax number] OUT, YOU

23  HAVE AUTHORIZED THEM TO UTILIZE OUR NUMBER AND WE

24  SUBSEQUENTLY GET MORE JUNK FAX."   Ex. 29 (capitalization in

25  original).  █████████████████████████████████████

26  PHI's staff manager and PHI's front desk employee, all testified that *they*

27  *believed giving out PHI's fax number over the phone constituted providing*

28  *consent* to receive faxes.  *See* Ex. 12 at 90:6-14 ("So my understanding of it was

-7-

1   that if you give out the number, you have just agreed to what he called an

2   unsolicited fax.  It's now no longer unsolicited, because you have agreed to give

3   them the number that's accepting the incoming fax."); Ex. 13 at 108:8-10 ███

4   ████████████████████████████████████████████████████████████

5   Ex. 8 at 136:4-7; Ex. 6 at 120:7-16.

6   **3.**     **Geismann Repeatedly Verified Its Fax Number To SK&A**

7   ███████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████

16  **4.**     **Geismann Provided Consent To Receive Faxes**

17       Geismann had a different written policy than PHI on answering the

18  phone.  Geismann's policy instructed employees to "ask who is calling and pass

19  that call to the appropriate person."  Ex. 31 at Geismann000190.  When taking a

20  message, Geismann instructed its employees to ask for the person's name,

21  phone number, and "a question or whatever pertinent information you can in

22  order to give it to the appropriate party."  *Id.*  The written policy does not

23  mention how to respond to phone inquiries seeking Geismann's fax number.

24  *See id.*

25  ███████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████
      ██████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████

### III.  LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "[A] dispute is 'genuine' for Rule 56 purposes [if] … a 'reasonable' jury could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court may draw reasonable inferences in favor of the non-moving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), but "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

### IV.  ARGUMENT

This Court should grant summary judgment in Masimo's favor on four grounds.  The first and second dispose of all of PHI and Geismann's claims.

The third disposes of all of Geismann's claims.   The fourth disposes of Geismann's claims as to the October 2011 fax.

**A.**     **There Is No Genuine Dispute That Plaintiffs Consented To Receive Promotional Faxes From SK&A**

"[P]rior express invitation or permission" is a complete defense in fax cases and "prior express consent" is a complete defense in phone cases. 47 U.S.C. § 227(a)(5) & (b)(1)(A).   While the statutory language differs, the Ninth Circuit has held that consent is a defense in both phone and fax cases, and looks to the consent analysis it applies in phone cases when deciding fax cases. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (TCPA "clearly provides that consent is a defense with respect to faxes") (citing *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("consent is a complete defense to [a] TCPA claim")).

The Ninth Circuit has held that "when people provide their telephone numbers, 'the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications.'"   *Van Patten*, 847 F.3d at 1045 (quoting 7 FCC Rcd. 8752, 8769 n.57 (1992)) (emphasis omitted).   Accordingly, "a consumer consents to contact for transaction-related communications when the consumer provides his or her phone number to the caller[.]"   *Id.*   Courts have "consistently found that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'"    *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *10 (W.D. Wash. Mar. 30, 2015) (quoting 7 FCC Rcd. 8752, 8769 ¶ 31); *Taylor v. Universal Auto Group I, Inc.,* 2014 WL 2987395, at *4-5 (W.D. Wash. July 1, 2014); *Baird v. Sabre Inc.,* 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014); *Leckler v. Cashcall, Inc.,* 2008 WL 5000528, at *2 (N.D. Cal. Nov. 21, 2008).

-10-

### 1.     <u>PHI Provided Consent To SK&A To Send It Faxes</u>

PHI repeatedly provided consent to SK&A during SK&A's telephone verification calls. PHI's written policy required its employees ask (1) who was calling and (2) why they needed PHI's fax number. Ex. 29; Ex. 6 at 120:21-121:13; Ex. 12 at 90:22-91:14. ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

There is no genuine dispute that such verification constituted consent. PHI admitted that verifying its fax number under such circumstances constituted permission for SK&A to send faxes. Ex. 29; Ex. 8 at 136:4-7; Ex. 13 at 108:8-10; Ex. 12 at 90:6-14; Ex. 6 at 120:7-16. That understanding is consistent with FCC guidance and court decisions. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992) ("persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary"); *Van Patten*, 847 F.3d at 1045; *Martinez v. Adir Int'l LLC*, 2015 WL 12670519, at *5 (C.D. Cal. July 7, 2015) (telephonic verification of phone numbers established consent); *Hudson v. Sharp Healthcare*, 2014 WL 2892290, at 5 (S.D. Cal. June 25, 2014) (same).

The law allows Masimo to rely on the consent SK&A obtained on behalf of its customers, including Masimo. *See Fober v. Mgmt. and Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018) (adopting the Eleventh Circuit's rule

that one may obtain consent indirectly through an "intermediary"); *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1102 (11th Cir. 2019) ("A fax recipient may provide his express permission to receive faxes from third parties").  Therefore, the permission PHI repeatedly provided for SK&A to send promotional faxes on behalf of its clients, including Masimo, disposes of PHI's claim against Masimo.

PHI cannot rebut the evidence of consent because PHI has no contrary recollection of its calls with SK&A.  During their depositions, none of PHI's employees could recall the conversations with SK&A.  Ex. 12 at 94:15-95:6; Ex. 6 at 124:14-125:7. ███████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████ PHI should have asked because Dr. Martinez provided consent to receive promotional faxes at PHI's fax number in the past.  *See Physicians Healthsource, Inc. v. Cephalon, Inc.*, 340 F. Supp. 3d 445, 452-53 (E.D. Pa. 2018).

Accordingly, the Court should grant summary judgment that Masimo had permission to send PHI promotional faxes.

**2.**     **PHI Cannot Contest It Provided Consent Due To Its Spoliation**

PHI should also be precluded from disputing it provided consent because it destroyed emails that may have further confirmed PHI provided consent, either directly to Masimo or through industry groups of which Masimo is a member.  A party is entitled to an adverse inference due to spoliation of evidence when: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Atencio v. TuneCore, Inc.*, 2018 WL 6265073, at *4 (C.D. Cal. Nov. 13, 2018) (citing standard from *Residential*

-12-

*Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).  All three requirements are met here.

First, PHI had an obligation to preserve the evidence at the time it was destroyed because PHI destroyed emails that may have evidenced consent ***after*** it filed this suit. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████ PHI undoubtedly lost other evidence because it has been filing TCPA cases for ***more than a decade*** and never implemented a litigation hold.  Ex. 13 at 54:14-55:3; Ex. 8 at 184:22-185:19, 216:1-13; Ex. 6 at 41:13-15; Ex. 12 at 58:7-15.

Second, PHI's failure to institute a litigation hold shows that PHI destroyed the documents with a culpable state of mind.  *See Montoya v. Orange County Sheriff's Department*, 2013 WL 12347292, at *7 (C.D. Cal. Oct. 15, 2013).  The failure to institute a litigation hold was not an inadvertent oversight in this case.  As discussed, PHI has never implemented a litigation hold in any case.  Further, PHI has been admonished for discovery misconduct in other cases.  *See, e.g.*, *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12 C 4978, 2014 WL 6561781, at *4 (N.D. Ill. Nov. 20, 2014) (excluding evidence after PHI withheld evidence and "cherry-picked" what it produced); *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 254 F. Supp. 3d 1007, 1027 (N.D. Ill. 2017) (finding PHI an inadequate class representative because it did not engage in "honest and responsive participation in discovery.").

-13-

Third, the evidence was relevant to Masimo's consent defense. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████  Additionally, the parties already argued the relevance of these documents, and this Court overruled PHI's objection and repeatedly ordered PHI to produce these documents. *See* Ex. 33 at 65:8-15 (finding PHI had an "obligation to maintain" Dr. Martinez's files so "it's important that Dr. Martinez's files be reviewed for production in this case"); *Id.* at 72:2-16 (ordering PHI to search for and produce emails with industry organizations).

Accordingly, the Court should grant an adverse inference that the evidence would have shown that PHI provided permission to send it promotional faxes. That adverse inference provides another basis on which the Court should grant summary judgment.

### 3.   Geismann Provided Consent To SK&A To Send It Faxes

There is no genuine dispute that Geismann repeatedly provided consent to SK&A during SK&A's telephone verification calls. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████

-14-



Thus, Geismann repeatedly provided permission for SK&A to send promotional faxes on behalf of its clients, including Masimo.

Accordingly, the Court should grant summary judgment that Masimo had permission to send Geismann promotional faxes.

**B.** **Plaintiffs Are Outside The Zone Of Interests Congress Intended To Protect With The TCPA**

"[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of the interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).  The zone of interests analysis looks to "the statutory provisions at issue and asks whether Congress authorized the plaintiff to sue under them." *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1119-20 (9th Cir. 2015).  The question is whether "the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399-400 (1987); *see also Lexmark*, 134 S. Ct. at 1387-90 (recognizing that some courts refer to the zone of interests analysis as "prudential standing").

/ / /

1  Here, independent of providing consent, neither Geismann nor PHI has a

2  cause of action because their desire to obtain promotional faxes for the purpose

3  of filing TCPA lawsuits is outside the zone of interests Congress sought to

4  protect.

5  **1.  Congress Enacted The TCPA To Prevent Advertisers From**

6  **Causing Fax Recipients Economic Harm**

7  In 1991, fax machines required expensive paper and could rarely process

8  more than one fax at a time.  *See* H.R. REP. No. 102-317, 1991 WL 245201, at

9  *25.  Congress enacted the TCPA to prevent advertisers from shifting the cost

10  of unwanted faxes to recipients.  *See id.*, at *10 (identifying cost of faxes and

11  interference with business operations as problems to be solved); S. REP. No.

12  102-178, *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968 (explaining purpose of

13  TCPA was to "facilitate interstate commerce by restricting certain uses of

14  facsimile ([f]ax) machines and automatic dialers").  Congress meant the TCPA

15  to protect the economic interests of people who did not want to receive

16  promotional faxes.  *See True Health*, 896 F.3d at 926 ("Congress intended to

17  remedy a number of problems associated with junk faxes, including the cost of

18  paper and ink, the difficulty of the recipient's telephone line being tied up, and

19  the stress on switchboard systems.").

20  Plaintiffs that seek out promotional faxes so they can try to make money

21  by filing TCPA lawsuits are outside the zone of interests Congress meant to

22  protect.  For example, in one case, a plaintiff acquired multiple mobile phones

23  "with the hope of receiving calls from creditors for the sole purpose of

24  collecting statutory damages" by filing TCPA lawsuits.  *Stoops v. Wells Fargo

25  Bank, N.A.*, 197 F. Supp. 3d 782, 788, 795-806 (W.D. Pa. 2016).  The court

26  found the plaintiff was outside the zone of interests Congress intended to

27  protect.  *Id.* (plaintiff also lacked Article III standing).  Instead of suffering the

28  kind of harm the TCPA sought to protect, the plaintiff sought to economically

-16-

benefit from the creditor phone calls.  *Id.*; *see also Telephone Science Corporation v. Asset Recovery Solutions LLC*, 2017 WL 56634, at *5 (N.D. Ill. Jan. 5, 2017) (company that sought out promotional calls was outside zone of interests).

Applying the zone-of-interests analysis is particularly appropriate in TCPA lawsuits, which are the "poster child for lawsuit abuse."  *See In re Rules & Regulations Implementing the TCP Act of 1991 et al.*, 30 FCC Rcd. 7961, 8073 (2015) (Comm'r Pai, dissenting), *set aside in part by ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018).  Subjecting businesses "to crippling suits at the behest of predatory trial lawyers only serves the interests of those self-same lawyers, not the American public."  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, et al.*, CG Dkt. Nos. 02-278 and 05-338, Order, 29 FCC Rcd. 13998, 14018 (2014) (Comm'r Pai, concurring in part and dissenting in part), *vacated and remanded by Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078 (D.C. Cir. 2017).  The FCC Chairman has advocated for "shutting down the abusive lawsuits by closing the legal loopholes that trial lawyers have exploited to target legitimate communications between businesses and consumers."  30 FCC Rcd. at 8073 (Comm'r Pai, dissenting).

## 2.    PHI Is Outside The Zone Of Interests

PHI's claims should be dismissed because PHI is outside the zone of interests Congress meant to protect with the TCPA.  Similar to the plaintiff in *Stoops*, PHI intentionally seeks out promotional faxes so that it can file TCPA lawsuits.  PHI instructed its front desk employee to intercept promotional faxes addressed to PHI doctors—including Dr. Martinez—and send them to an attorney to file lawsuits. Ex. 6 at 102:17-103:11.  PHI's employee did so even though Dr. Martinez specifically asked to receive promotional faxes from the AMA and its partners, and she had no way of knowing which faxes these were.

Ex. 15 at 1. ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████     ████████████████████████   PHI even instructed its employees ***not*** to opt out of receiving faxes.   Ex. 6 at 135:17-136:7. ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████   Today, PHI exists as a shell to obtain faxes and litigate TCPA cases.

As in *Stoops*, PHI intentionally sought out the faxes at issue to file TCPA lawsuits for financial gain.   *See* 197 F. Supp. 3d at 805.   Therefore, PHI is outside the zone of interests Congress meant to protect with the TCPA.

### 3.    Geismann Is Outside The Zone Of Interests

Geismann is also outside the zone of interests Congress meant to protect with TCPA.   Like PHI, Geismann sought out promotional faxes to file TCPA lawsuits.   For example, Greg Geismann sat next to Geismann's fax machine and collected promotional faxes to send to an attorney to file TCPA lawsuits.   Ex. 19 at 31:14-16, 33:2-34:12. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

As in *Stoops*, Geismann intentionally sought out faxes, including the one about which it now complains, for the purpose of filing TCPA lawsuits for financial gain.   *See* 197 F. Supp. 3d at 805.   Therefore, Geismann is outside the zone of interests Congress meant to protect with the TCPA.

/ / /

-18-

## C.      Geismann Lacks Standing

Standing requires that (1) the plaintiff suffered an injury in fact, *i.e.*, one that is sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury is "fairly traceable" to the challenged conduct, and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012).  Geismann lacks standing because it has no evidence it suffered any injury.

### 1.      Geismann Has No Evidence Of Actual Injury

Geismann cannot establish any tangible injury (such as loss of paper, toner, or electricity) or intangible injury (such as invasion of privacy) because Geismann declined to identify any alleged injury in discovery.   Masimo expressly asked Geismann to identify any harm it suffered, and Geismann identified none.  The relevant interrogatory, and Geismann's verified response, are set forth below in full.

**INTERROGATORY NO. 9:**

> Describe in detail any harm that You allege You suffered from receiving any allegedly unwanted facsimile transmissions from any person or entity, including, but not limited to, Masimo.

**ANSWER (4/29/19):**

> Geismann seeks to recover its statutory liquidated damages individually and on behalf of the class for each TCPA violation.

Ex. 34 at 8:13-18.  Geismann cannot now claim to have suffered any injury after refusing to identify any such injury in discovery.  *See Ladow v. U.S.*, 2010 WL 1740796, at *3 (E.D. Wash. 2010) (granting summary judgement and refusing to consider facts not disclosed in defendant's interrogatory responses);

1    *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 334

2    n.64 (C.D. Cal. 2004) ("summary judgment is appropriate because plaintiff

3    failed to identify [the relevant] evidence in its responses to defendants'

4    interrogatories"). Accordingly, Geismann lacks standing. *Spokeo, Inc. v.*

5    *Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("even named plaintiffs who represent

6    a class 'must allege and show that they personally have been injured, not that

7    injury has been suffered by other, unidentified members of the class to which

8    they belong'") (citations omitted).

9    **2.**    **Alleging A Statutory Violation Does Not Establish Injury**

10    An alleged statutory violation alone is insufficient to establish standing.

11    The Supreme Court expressly held that "Article III standing requires a concrete

12    injury even in the context of a statutory violation[.]" *Spokeo*, at 1549. The

13    Supreme Court explained that a plaintiff does not "automatically satisf[y] the

14    injury-in-fact requirement whenever a statute grants a person a statutory right

15    and purports to authorize that person to sue to vindicate that right." *Id.*

16    Accordingly, a plaintiff cannot "allege a bare procedural violation, divorced

17    from any concrete harm, and satisfy the injury-in-fact requirement of Article

18    III." *Id.*

19    The Ninth Circuit has since held that an unwanted call or text message to

20    a mobile phone could "invade the privacy and disturb the solitude of their

21    recipients" and cause intangible harm sufficient to satisfy *Spokeo*. *Van Patten*,

22    847 F. 3d at 1043. But, as set forth above, Geismann does not allege it suffered

23    any such injury.

24    Moreover, nothing suggests an unwanted business fax can similarly

25    invade a privacy interest. To the contrary, while Congress relied on privacy as

26    the basis for prohibiting unwanted phone calls and text messages, it relied on

27    economic concerns as the basis for prohibiting unsolicited faxes. *See* H.R. Rep.

28    No. 102-317, 1991 WL 245201, at *10 (identifying cost of faxes and

-20-

interference with business operations as problems to be solved).   The Ninth Circuit has similarly observed that, in enacting the fax provisions of the TCPA, "'Congress intended to remedy a number of problems associated with junk faxes, including the cost of paper and ink, the difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems.'"   *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 926 (9th Cir. 2018) (quoting *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015)).   Thus, the "privacy interest" discussed in *Van Patten* is inapplicable here.

However, even if evidence of an invasion of a privacy interest could be sufficient to establish standing in a fax case, Geismann does not assert it suffered such harm.   Moreover, Geismann would not be able to rely on such a theory because corporations have no privacy interests to be invaded.   *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("corporations can claim no equality with individuals in the enjoyment of a right to privacy"); *FCC v. AT&T Inc.*, 131 S. Ct. 1177, 1185 (2011) (explaining that even though the FOIA defines a "person" as including corporations, "an unwarranted invasion of personal privacy does not extend to corporations").   Therefore, Geismann could not claim to have standing under *Van Patten* for alleged intangible injury, even if *Van Patten* applied to business faxes.

**D.   <u>There Is No Genuine Dispute Geismann Was Not Successfully Sent The October 2011 Fax</u>**

Plaintiffs bear the burden of showing they were successfully sent each of the two faxes at issue.   *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).   Here, Plaintiffs offer no evidence that Geismann was successfully sent the October 2011 fax.   Indeed, Plaintiffs' complaint does not even allege Geismann received the 2011 fax.   *See* Dkt. 197 ¶ 2.   To the contrary, Plaintiffs allege Masimo sent only "***one*** unsolicited fax advertisement to Geismann on or about

-21-

1  April 10, 2012 . . . ." 

9       Plaintiffs cannot now try to manufacture a factual dispute by presenting a
10 declaration, much less attorney argument, contradicting Geismann's
11 unequivocal corporate testimony. "The general rule in the Ninth Circuit is that a
12 party cannot create an issue of fact by an affidavit contradicting his prior
13 deposition testimony." *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262,
14 266 (9th Cir. 1991); *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009)
15 ("The rationale underlying the sham affidavit rule is that a party ought not be
16 allowed to manufacture a bogus dispute with himself to defeat summary
17 judgment.").

18       Nor could Plaintiffs present evidence sufficient to prove that Geismann
19 received the 2011 fax. While PHI has both faxes, Geismann has only the 2012
20 fax. Geismann's lack of evidence regarding the 2011 fax is particularly
21 compelling because Geismann is a serial class action plaintiff who had a policy
22 of keeping promotional faxes and sending them to its TCPA lawyer. Ex. 19 at
23 31:14-21, 33:2-34:12.

24       Geismann's "complete failure of proof concerning an essential element of
25 the nonmoving party's case necessarily renders all other facts immaterial."
26 *Celotex*, 477 U.S. at 323. Masimo is entitled to summary judgment because
27 "the nonmoving party has failed to make a sufficient showing on an essential
28 element of [its] case with respect to which [it] has the burden of proof." *Id.*

## V. <u>CONCLUSION</u>

For all the reasons discussed above, Masimo respectfully requests the Court grant summary judgment that:

1.      PHI and Geismann consented to receive the faxes at issue;

2.      PHI and Geismann are outside the zone of interests Congress sought to protect and thus cannot bring TCPA claims;

3.      Geismann has no evidence of injury and thus lacks standing; and

4.      Geismann cannot establish it was successfully sent the 2011 fax.

Masimo further requests the Court enter judgment against PHI and Geismann on their individual claims and dismiss this matter in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>September 10, 2019</u>      By: <u>/s/ Benjamin A. Katzenellenbogen</u>
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Stephen Larson
Adam B. Powell

Attorneys for Defendants
MASIMO CORPORATION and
MASIMO AMERICAS, INC.

-23-